USAID

UNITED STATES AGENCY for INTERNATIONAL DEVELOPMENT

CAIRO, EGYPT

VIA FAX and EMAIL

Joel H. Lamstein, President
John Snow, Inc.
44 Farnsworth Street
Boston, MA 02210-1211
Fax: (617) 482-0617
Email: joel_lamstein@jsi.com

Daniel A. Ball, Esq.
Selzer Gurvitch, Rabin & Obecny
4416 East West Highway
4th Floor
Bethesda, MD 20814-4568
Fax: (301) 986-1301
Email: dball@sgrolaw.com

Re: John Snow, Inc., Contract No. 263-C-00-98-00041-00
Contracting Officer's Final Decision and Unilateral Debt Determination

Dear Mr. Lamstein and Mr. Ball:

This letter, pursuant to ADS 625.3.6.1 and FAR 32.608, constitutes my unilateral determination, as the Contracting Officer, that John Snow, Inc. is indebted to the United States Government under the above Contract issued by USAID in the amount of **$872,327.18.** As the responsible Contracting Officer, I have the inherent authority to determine the amount of claims arising under the above USAID issued contract. Such a determination may be in the form of a negotiated settlement or a unilateral debt determination. In this case, a unilateral determination is necessary because the parties have not been able to reach a negotiated settlement after an extended period of time due primarily to JSI's failure to promptly provide pertinent and persuasive information relative to the issues and JSI's failure to successfully

negotiate this debt with USAID and/or resolve its apparent ongoing disputes with JSI subcontractors expeditiously.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000.00 or less or its accelerated procedure for claims of $100,000.00 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Further and to the extent necessary, this final decision shall also constitute final Notice of Disallowance. I agree that this Final Decision should have been issued with the Notice of Demand for Payment dated January 13, 2005. As such, and per your request, that Notice of Demand for Payment will be withdrawn. A new Demand for Payment will be issued and will accompany this Final Decision pursuant to ADS 625.3.6.2 b.

Description of the Claim

USAID claims that JSI has been overpaid $872,327.18 for 119 defective contractually non-compliant neonatal incubators that were replaced. JSI refuses to provide USAID a refund for the defective and contractually non-compliant incubators and the parties have failed to negotiate a successful resolution of this claim. The amount is broken down as follows:

| | |
|---|---|
| Price of 119 Incubators: | 785,880.35 |
| Fee: | 23,576.41 |
| Procurement services Charge: | 62,870.43 |
| Total | $872,327.18 |

Pertinent Contract Terms

The pertinent contract terms and clauses include but are not necessarily limited to the following:

Part I Section C.8.2 Task Eleven Commodity Procurement Program and Section 10.9 Task Nine: Commodity Procurement Program for the option period.
Part I, Section E.1 52.252-2, Clauses Incorporated by Reference (Inspection and Acceptance), incorporating FAR 52.246-3 and 52.246-5.
Part I, Section E.2, Inspection and Acceptance
Part I Section G.1, Clauses Incorporated by Reference ( Contract Administration) incorporating AIDAR 752.7003, Documentation for Payment
Part I, Section G.4, Technical Directions/Relationship with USAID
Part II, Section I.1. Contract Clauses, 52.252-2, Clauses Incorporated by Reference including but not necessarily the following FAR and AIDAR Clauses:
FAR
52.212-4 Contract Terms and Conditions- Commercial Items
52.233-1 Disputes
52.244-2 Subcontracts
52.244-6 Subcontracts for Commercial Items
52. 245-5 Government Property
AIDAR
752.245-70 Government Property
752.245-71 Title to and Care of Property

Factual Areas of Agreement and Disagreement

USAID submits the following factual areas of agreement and disagreement. To the extent USAID is aware or anticipates a factual dispute it is so indicated.

1. In June 2001and November 2001, JSI using the commodities procurement services procured through its subcontractor TCA procured through ICS 119 neonatal incubators from Preemicare, Inc. The parties disagree as to whether these incubators were properly approved under the pertinent procurement plan.

2. These incubators were delivered and installed at various MOHP locations between May and July 2002.
3. JSI invoiced and was paid in full for these incubators.
4. Shortly after delivery and installation, MOHP staff began experiencing various problems with the incubators. JSI relayed these concerns, to its subcontractor/supplier ICS in September 2002.
5. Due to safety concerns and at the recommendation of the supplier/manufacturer's representative, the incubators were taken out of service in December 2002.
6. In July 2003 the incubators were retrieved from the MOHP hospitals against an official letter from ICS stating that the incubators were still under warranty and were being removed for servicing.
7. The manufacturer Preemicare attempted to retrofit and repair the incubators and certified in August 2003, that the incubators were fit to be returned to service.
8. Shortly after Preemicare's declaration that the incubators were fit for service, JSI and its subcontractor/supplier ICS and the manufacturer Preemicare agreed to have the incubators tested by an independent consultant – ECRI. Two incubators were shipped to the United States and tested by ECRI in November 2003. Both incubators failed testing. Thereafter in May 2004, ECRI completed further testing in Egypt on 44 incubators. All 44 incubators failed testing. ECRI recommended that the entire lot of incubators not be returned for clinical use.
9. In addition to the 119 original incubators purchased from Preemicare, JSI purchased 34 Ohmeda brand incubators in November 2002, 72 Hill-Rom brand incubators in November 2003 and 15 Ohmeda incubators in 2004. These incubators were delivered and installed and JSI invoiced and received payment for these incubators. It is disputed whether some or all of these incubators were "replacement" incubators for the original 119 defective Preemicare Incubators. It is also disputed whether the purchase of these incubators was part of an appropriately approved procurement plan.
10. By June 2003, JSI was aware of the urgency of this matter and relayed to ICS its concerns that the incubators had been out of use for more than six months. The incubators remain out of use – more than thirty-one (31) months after the delivery/installation of the last Preemicare incubator in July 2002, and twenty-six months (26) since the incubators were taken out of service.
11. After the incubators were removed from the MOHP hospitals, JSI on its own accord or through ICS had the incubators stored in an

apartment in Maadi Cairo, Egypt. USAID was concerned that the incubators might improperly be placed in service. As such from December 2004 through February 2005, USAID requested cooperation in inspecting and removing the incubators to a more secure USAID warehouse. Both JSI and its subcontractor attempted to disassociate themselves from the incubators and the premises in which the incubators were stored and neither party claimed to have the right to access the property where the incubators were stored. USAID contends that JSI directly and/or through its subcontractor, ICS, improperly abandoned the incubators putting the incubators at risk for damage, destruction or misuse. JSI refutes this characterization but has not offered a plausible explanation for why USAID had such difficulties in obtaining access and removing the incubators.

12. JSI has not diligently prosecuted warranty claims or any other claims against ICS or Preemicare, the manufacturer. USAID anticipates that JSI disagrees with this conclusion.
13. An investigation by the USAID Regional Inspector General's Office has discovered that the FDA Premarket Notification 510(k) or Premarket Approval letter required under USAID regulations and submitted by apparently is invalid and not authentic as the FDA records indicate no records of such Notification being issued. Further, the invoices submitted by JSI for payment on the incubators failed to properly certify that the "products provided are covered by a valid approval letter and/or otherwise in compliance on the date of shipment with all applicable United States laws and regulations governing the delivery of regulated products in interstate commerce" as required by Special Provision 67 of the Aid Commodity Eligibility Listing. USAID anticipates that JSI will disagree with this contention.

Statement of Decision

As noted above, it is the Contracting Officer's Final Decision and Unilateral Determination that John Snow, Inc. is indebted in the amount of **$872,327.18** to the United States Government under the above Contract issued by USAID. My decision is based on the reasons set forth in my November 1, 2004 letter to Mr. Joel Lamstein, President of JSI, my review of the correspondence from JSI and its attorney, including Mr. Lamstein's November 28, 2004 letter conceding 4 of the 5 factual points made in my November 1, 2004 letter, the additional information provided in the meeting with Mr. Ken Olivola on December 6, 2004 here at USAID/Egypt, my

review of correspondence and emails from JSI and/or ICS, and on the advice and assistance from the Mission's Legal Office and the Technical Office.

Further supporting my decision have been the arduous but non-productive negotiations between the parties regarding this issue. As Mr. Ball's December 19, 2004, letter acknowledges "[d]uring the past year, there have been almost monthly meetings between the COTR/CTO, the Egyptian Ministry of Health and Population (MOHP), and JSI's Chief of Party" in attempts to resolve the "incubator issue." Mr. Ball's letter further promises "JSI has reason to believe that the incubator issue can be resolved by the end of January 2005, if not earlier." Despite these numerous meetings and promises, JSI has not offered any proposed solutions and the matter remains unresolved.

The lack of resolution has been exacerbated by the extraordinary difficulties USAID had with JSI and its subcontractor, ICS, in trying to inspect and obtain for safety reasons the incubators from JSI and/or ICS. I was particularly dismayed to learn that incubators had been stored in less than ideal conditions in an apartment for which rent had not been paid for several months and that the landlord was threatening to dispose of the incubators in order to recover past rent due.

Lastly and equally important, it appears based on the RIG Office's investigation, that the Preemicare Model No. 605 neonatal incubators provided by JSI apparently did not have proper premarket notification or approval. Neonatal incubators are medical devices under USAID and FDA regulations that require premarket notification and premarket approval before being sold. USAID's Commodity Eligibility Listing requires medical instruments and appliances have the following documentation for reimbursement:

1. A copy of the applicable approval letter from the Food and Drug Administration (FDA) covering medical devices that require premarket approval in the United States.

2. A certificate by the supplier, endorsed on or attached to the invoice, as follows: "The undersigned supplier agrees and certifies that all products provided are covered by a valid FDA approval letter and/or otherwise in compliance on the date of shipment with all applicable United States laws and regulations governing the delivery of regulated

products in interstate commerce." See Special Provision 67 of the Aid Commodity Eligibility Listing

ADS 324.5.8 et al., requires USAID to claim a refund from a contractor when sources show that USAID funds have been used to finance a transaction which is not in compliance with the USAID rules and regulations as required in the underlying agreement, or which is ineligible for other reasons, such as fraud. In this case, it appears as if the Preemicare Model No. 605 neonatal incubators were ineligible for financing because the Premarket Notification 510(k) and/or PMA letter submitted was invalid. This problem is further exacerbated because JSI failed to provide the required certification regarding FDA approval endorsed on or attached to its invoices for payment.

These reasons separately and combined substantiate and justify my determination that JSI is indebted to USAID in the amount of $872,327.18.

Sincerely,

Roy Plucknett
USAID/Egypt
Contracting Officer

Attachment - Revised Demand for Payment
CC: Elizabeth Palmer, USAID/Egypt Acting Controller

AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING | PAGE OF PAGES 1 | 109

2. CONTRACT (Proc. Inst. Ident.) NO. 263-C-00-98-00041-00

3. EFFECTIVE DATE 15 March 1998

4. REQUISITION/PURCHASE REQUEST/PROJECT NO. 263-0242-3-94132

5. ISSUED BY CODE
Office of Procurement
USAID - Unit 64902
APO AE 09839-4902

6. ADMINISTERED BY (If other than Item 5) CODE

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State, and ZIP Code)
John Snow, Inc.
44 Farnsworth Street
Boston, MA 02210-1211

TIN: 04257850
DUNS: 09-150-0090

CODE | FACILITY CODE

8. DELIVERY ☐ FOB ORIGIN ☐ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES ( 3 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ITEM

11. SHIP TO/MARK FOR CODE

12. PAYMENT WILL BE MADE BY CODE
Office of Financial Management
USAID - Unit 64902
APO AE 09839-4902

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 USC 2304(c)( ) ☐ 41 USC 253(c)( )

14. ACCOUNTING AND APPROPRIATION DATA
See Section G.6

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QTY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| 1 | Task One | 1 | EA | $ 2,273,544.00 | $ 2,273,544.00 |
| 2 | Task Two | 1 | EA | $ 2,940,440.00 | $ 2,940,440.00 |
| 3 | Task Three | 1 | EA | $ 610,316.00 | $ 610,316.00 |
| 4 | Task Four | 1 | EA | $ 786,932.00 | $ 786,932.00 |
| | < See Continuation Sheet(s) > | | | | |

15G. TOTAL AMOUNT OF CONTRACT $ 23,416,682.00

16. TABLE OF CONTENTS


| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-2 | X | I | CONTRACT CLAUSES | 78-92 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3-5 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS/WORK STATEMENT | 6-63 | X | J | LIST OF ATTACHMENTS | 93-109 |
| X | D | PACKAGING AND MARKING | 64 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 65-66 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 67-69 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 70-73 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 74-77 | | M | EVALUATION FACTORS FOR AWARD | |


CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return all copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
JOEL H. LAMSTEIN PRESIDENT

20A. NAME OF CONTRACTING OFFICER
Donella J. Russell
Contracting Officer

19B. NAME OF CONTRACTOR
BY [signature]
(Signature of person authorized to sign)

19C. DATE SIGNED 3/27/98

20B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

20C. DATE SIGNED 4/6/98

NSN 7540-01-152-8069
PREVIOUS EDITION UNUSABLE

26-107

GPO 19850-469-794

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA
FAR (48 CFR) 53.214(a)

| CONTINUATION SHEET | CONTRACT NO. 263-C-00-98-00041-00 | PAGE 2 |
|---|---|---|

NAME OF CONTRACTOR
John Snow, Inc.

| ITEM NO. (A) | SUPPLIES OR SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| 5 | Task Five | 1 | EA | $ 1,664,840.00 | $ 1,664,840.00 |
| 6 | Task Six | 1 | EA | $ 1,426,416.00 | $ 1,426,416.00 |
| 7 | Task Seven | 1 | EA | $ 1,442,467.00 | $ 1,442,467.00 |
| 8 | Task Eight | 1 | EA | $ 2,663,483.00 | $ 2,663,483.00 |
| 9 | Task Nine | 1 | EA | $ 719,341.00 | $ 719,341.00 |
| 10 | Task Ten | 1 | EA | $ 2,254,491.00 | $ 2,254,491.00 |
| 11 | Task Eleven | 1 | EA | $ 6,636,612.00 | $ 6,636,612.00 |

# PART I - THE SCHEDULE

## SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS

B.1 PURPOSE

The purpose of this contract is to reduce neonatal and maternal mortality in Egypt.

(End of Clause)

B.2 CONTRACT TYPE

This is a Cost-Plus-Fixed-Fee (CPFF) completion contract. For the consideration set forth below, the Contractor shall provide the deliverables or outputs described in Sections C and F.

(End of Clause)

B.3 ESTIMATED COST, FIXED FEE, AND OBLIGATED AMOUNT

(a) The estimated cost for the performance of the work required hereunder, exclusive of fixed fee, if any, is $22,0[illegible] for the base period and $18,804,672 for the option period. The fixed fee is $1,328,000 for the base period and $1,128,0[illegible] for the option period. The estimated cost plus fixed fee for the base period is $23,416,882 and the total estimated cost plus fixed fee for the option period is $19,932,672.

(b) Within the estimated cost plus fixed fee (if any) specified in paragraph (a) above, the amount currently obligated and available for reimbursement of allowable costs incurred by the Contractor (and payment of fee, if any) for performance hereunder is $5,000,000. The Contractor shall not exceed the aforesaid obligated amount.

(c) Funds obligated hereunder are anticipated to be sufficient through March 1, 1999.

(d) Payments of fixed fee to the Contractor, if any, shall be based upon the completion of performance milestones established for this contract. The schedule for the payment of fee and the amount of fee applicable to each milestone is set forth in Attachment J.1.

(e) The contractor shall submit, for technical review, all information and appropriate documentation necessary to demonstrate and support the achievement of milestones to the Contracting Officer's Technical Representative (COTR), with a copy to the Contracting Officer. The Contractor shall also provide an explanation and/or justification if any milestones have not been achieved according to the schedule. The COTR will lead a review of the documentation to determine if the milestones have been met. The COTR and Contracting Officer (CO) will discuss the COTR's recommendations, and the CO will approve or disapprove the payment of fee.

(f) If the Contractor does not meet a milestone per the schedule, the corresponding fee shall not be paid until the milestone has been adequately achieved.

[End of Clause]

B.4 LINE ITEMS

| | |
|---|---|
| **Base Period:** | |
| Task One: | $ 2,273,544 |
| Task Two: | 2,940,440 |
| Task Three: | 610,316 |
| Task Four: | 786,932 |
| Task Five: | 1,664,840 |
| Task Six: | 1,426,4[illegible] |
| Task Seven: | 1,442,4[illegible] |
| Task Eight: | 3,66[illegible],483 |
| Task Nine: | 719,[illegible]41 |
| Task Ten: | 2,[illegible]59,4[illegible] |
| Task Eleven: | 6,636,612 |
| Total Estimated Cost Plus Fixed Fee-Base Period: | $23,418,337 |
| **Option Period:** | |
| Task One: | $ 2,537,[illegible] |
| Task Two: | 2,951,211 |
| Task Three: | 960,843 |
| Task Four: | 754,[illegible] |
| Task Five: | 1,650,[illegible] |
| Task Six: | 2,155,2[illegible] |
| Task Seven: | 1,953,374 |
| Task Eight: | 2,718,[illegible] |
| Total Estimated Cost Plus Fixed Fee-Option Period: | $19,932,672 |

B.5 INDIRECT COSTS (DEC 1997)

Pending establishment of revised provisional or final indirect cost rates, allowable indirect costs shall be reimbursed on the basis of the following negotiated provisional or predetermined rates and the appropriate bases:

| Description | Rate | Base | Type | Period |
|---|---|---|---|---|
| Overhead | 70.00% | 1/ | 1/ | 1/ |

1/ Base of Application: Direct labor dollars, plus holiday, sick and vacation
Type of Rate: Provisional
Period: 01/01/94 until amended

[End of Clause]

B.6 CEILING ON INDIRECT COST RATES (DEC 1997)

(1) Reimbursement for indirect costs shall be at the lower of the negotiated final (or predetermined) rates or the following ceiling rates:

| For Accounting Period Ending | Description | Rate |
|---|---|---|
| 12/31/98 | Overhead | 75.00% |
| 12/31/99 | Overhead | 75.00% |
| 12/31/00 | Overhead | 75.00% |
| 12/31/01 | Overhead | 75.00% |
| 12/31/02 | Overhead | 75.00% |
| 12/31/03 | Overhead | 75.00% |
| 12/31/04 | Overhead | 75.00% |

(2) The Government will not be obligated to pay any additional amount should the final indirect cost rates exceed the negotiated ceiling rates. If the final indirect cost rates are less than the negotiated ceiling rates, the negotiated rates will be reduced to conform with the lower rates.

(3) This understanding shall not change any monetary ceiling, obligation, or specific cost allowance or disallowance. Any changes in classifying or allocating indirect costs requires the prior written approval of the Grant/Agreement/Contracting Officer.

(End of Clause)

B.[illegible] COST REIMBURSABLE

The U.S. dollar costs allowable shall be limited to reasonable, allocable and necessary costs determined in accordance with FAR 52.216-7, Allowable Cost and Payment, FAR 52.216-8, Fixed Fee, if applicable, and AIDAR 752.7003, Documentation for Payment.

(End of Clause)

[END OF SECTION B]

## SECTION D - PACKAGING AND MARKING

**D.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (JUN 1988)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. AID ACQUISITION REGULATION (48 CFR CHAPTER 7) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 752 7009 | MARKING | JAN 1993 |

(End of Clause)

(END OF SECTION D)

## SECTION E - INSPECTION AND ACCEPTANCE

**E.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far and http://www.info.usaid.gov

1. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.246-3 | INSPECTION OF SUPPLIES - COST-REIMBURSEMENT | APR 1984 |
| 52.246-5 | INSPECTION OF SERVICES - COST-REIMBURSEMENT | APR 1984 |

[End of Clause]

**E.2 INSPECTION AND ACCEPTANCE**

USAID inspection and acceptance of services, reports and other required deliverables or outputs shall take place in Egypt or at any other location where the services are performed and reports and deliverables or outputs are produced or submitted. The COTR listed in Section G has been delegated authority to inspect and accept all services, reports and required deliverables or outputs.

[End of Clause]

**E.3 MONITORING AND EVALUATION PLAN**

(a) The USAID/COTR will conduct periodic performance reviews to monitor the progress of work and the achievement of results under this contract, based on the targets specified in the performance milestone plan and the other contract terms and conditions, which will form the basis of the Contractor's permanent performance record with regard to this contract. The Contractor Performance Report form (Attachment J.13) will be used for the evaluations periodically required under FAR 42.15

(b) Evaluations focussed on key implementation issues may occur one or more times during or after the implementation of this contract. Such external evaluation(s) will be conducted by USAID or its designee, and may include a detailed assessment of project organization, management, field work, significant outputs, and the quality and quantity of overall performance. The cost of evaluations involving this contract will be paid by USAID and will not be charged against this contract, except to the extent that contractor personnel are required to brief or assist an evaluation team.

E.4 PERFORMANCE STANDARDS

Evaluation of the Contractor's overall performance in accordance with the performance standards set forth herein shall be conducted jointly by the COTR and the Contracting Officer, and shall form the basis of the Contractor's permanent performance record with regard to this contract.

[End of Clause]

[END OF SECTION E]

*Once a range of grant topics have been agreed upon, a series of grant workshops will be organized so that NGOs will have skills required to prepare grant proposals, receive and administer grant monies, and monitor and report on grant activities. Grants will be provided to NGOs through this activity, and the Contractor will work with district level NGOs and the MOHP to increase the flow of public health information to local NGO grant recipients.*

*v. Monitoring Plan and Completion Indicators*

*Completion indicators to measure achievements by activity:*

- *100 PVOs receiving small grants*
- *staff from 100 PVOs trained in business practices and small grants management*

Performance targets: Award approximately 120 small grants to NGOs not to exceed $2 million in the target districts.

| End of | Cumulative Total |
|---|---|
| Year 1: | 20 grants |
| Year 2: | 50 grants |
| Year 3: | 80 grants |
| Year 4: | 100 grants |

C.6.2. TASK ELEVEN: Commodity Procurement Program

The Contractor shall undertake commodity needs assessments, shall prepare semi-annual procurement plans and shall undertake all commodity procurement (estimated at $6,000,000 in the base period and $6,000,000 in the option period) necessary to achieve the results under this contract. Equipment will include, inter alia, vehicles, clinical, medical, office, IEC and computing equipment to support activities with the MOHP and MOI at the central, governorate and district levels and to meet community and NGO needs. The Contractor shall submit semi-annual procurement plans to the Contracting Officer for approval and semi-annual reports on the status of procurements to the COTR.

The Contractor's strategy for implementing this task is as follows:

*i. Task Definition & Issues*

*The HM/HC Project will require a variety of permanent and expendable equipment and supplies ranging from MCH commodities to training supplies to office supplies to building rehabilitation materials. Many of these items will need to be procured off-shore. Most importantly, the Contractor is sensitive to the extreme importance of having the right materials available in the right place at the right time. Poor procurement processes can doom a project to unmet deadlines, unmet commitments and shattered credibility.*

*The Contractor is fully aware of the multitude of potential pitfalls embedded in procurement activities. Even when every appropriate step has been judiciously executed, unforseen and uncontrollable events may disrupt production, shipping and delivery schedules. Too often, equipment and supplies procured by foreign donors are not properly maintained. Staff who are intended to use them are not fully trained in their proper purpose, operation and maintenance.*

## SECTION F - DELIVERIES OR PERFORMANCE

F.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far and http://www.info.usaid.gov

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.242-15 | STOP-WORK ORDER<br>Alternate I (APR 1984) | AUG 1989 |
| 52.247-42 | C.I.F. DESTINATION | APR 1984 |

(End of Clause)

F.2 PERIOD OF PERFORMANCE

The period of performance for this contract is March 15, 1998 through September 15, 2001. The period of performance for option periods, if any, is:

OPTION PERIOD 1 September 16, 2001 through March 14, 2003

(End of Clause)

F.3 PERFORMANCE MILESTONES

The performance milestones against which the Contractor's progress will be measured and fee paid are set forth in Attachment J.1.

F.4 AIDAR 752.7026 REPORTS (OCT 1996)

1. Performance monitoring reports (PMRs): The contractor shall submit performance reports summarizing progress of the major activities in process in relation to the requirements of the contract, indicating any problems encountered, and proposing remedial actions as appropriate.

a) Performance reports shall be submitted within 30 days of the three-month periods (calendar quarters) ending on March 31, June 30, September 30, and December 31.

b) The contractor shall submit the reports to the cognizant Contracting Officer's Technical Representative (COTR) identified in Section G of the Schedule, who will forward the reports to the responsible Contracting Officer.

2. Performance evaluation reports (PERs): The CO shall use information contained in the periodic PMRs, discussed in paragraph 1, and input from the COTR, to evaluate contractor performance on completion of activities

and, for multi-year contracts, on an interim basis.

a) The Contractor Performance Report (AID form 1420-66) which will be used to evaluate performance is attached to the Schedule (See list of attachments, Section J).

b) Contractors shall have 30 days to comment on or rebut the assessment, or may simply concur with the assessment by signing and returning the CPR form to the CO.

3. No other performance reports shall be required. The contractor, however, shall promptly notify the CO and COTR of any problems, delays, or adverse conditions which materially impair the contractor's ability to meet the requirements of the contract.

(End of clause)

F.5 DOCUMENTATION REQUIREMENTS

(a) Annual Workplans and Work Plan Reviews

The annual work plan, divided by results and supporting results, will be a key document for planning contract activities for each upcoming year, against which Contractor performance can be monitored and evaluated by both USAID and the Contractor. Each year the contractor will submit a detailed annual work plan indicating planned activities for each result category. In the first year of this contract, the annual work plan will be due to the COTR within 45 days after the effective date of the contract. In subsequent years, the work plan will be due to the COTR not later than 30 days before the start of the new year covered by the plan. It is anticipated that USAID Mission staff, host country officials and other appropriate persons will review the annual workplan in order to provide comments thereon and to recommend changes. Such comments and changes, however, if accepted by the Contractor, shall not constitute a change from the terms of this contract. Annual work plans shall specify a time table for the implementation of planned activities and a summary program budget (by result category). After the first year, the annual work plan shall include a brief summary annual report on the previous year's activities and budget data. The workplans are intended to be working documents for the use of the contractor and USAID; much of the information may be presented in tabular format, and there is no expectation of widespread public dissemination.

(b) Completion Report

The Contractor shall prepare a completion report which summarizes the accomplishments of the assignment, methods of work used, and recommendations regarding unfinished work and/or program continuation. The completion report shall also contain an index of all reports and information products produced by the contract. Each report and information product will be described in the index using the specifications in paragraph (e) below. The report shall be submitted within 30 days after completion of the work hereunder unless the required date of submission is extended by the Contracting Officer.

F.6 KEY PERSONNEL

The key personnel identified below are considered essential to the work being performed. Unless otherwise agreed to in writing by the Contracting Officer, the Contractor shall be responsible for providing such personnel for performance at the level-of-effort and for the term required. Failure to provide key personnel designated below may be considered nonperformance by the Contractor unless such failure is beyond the control, and through no fault or negligence of the Contractor. The Contractor shall immediately notify the Contracting Officer and the COTR of any Key Personnel's departure and the reasons therefor. The Contractor shall take steps to immediately rectify this situation and shall propose a substitute candidate for each vacated position along with a budget impact statement in sufficient detail to permit evaluation of the impact on the program. No replacement of personnel shall be made by the Contractor without the written consent of the Contracting Officer whether provided in advance or by ratification.

1. Chief of Party: Reginald Gipson
2. MCH Specialist/Deputy Chief of Party: Ali Abdel Hameid
3. Quality Assurance/Human Resource Specialist. Thomas Coles
4. IEC Specialist: Tawhida Hamed Khalil
5. Katrina Kruhm

[End of Clause]

F.7 ADDRESS FOR PPC/CDIE/DI

The reports and other intellectual products referenced in 752.7026, Reports, should be sent to:

USAID
PPC/CDIE/DI
Attn: Acquisitions
Room 206G, SA-18
Washington, DC 20523-1820

[End of Clause]

[END OF SECTION F]

## SECTION G - CONTRACT ADMINISTRATION DATA

G.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES
AND AID ACQUISITION REGULATION (48 CFR CHAPTER 7) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 752.7003 | DOCUMENTATION FOR PAYMENT | APR 1984 |

(End of Clause)

G.2 ADMINISTRATIVE CONTRACTING OFFICE

The Administrative Contracting Office is:

Directorate of Procurement
USAID/Egypt
Unit 64902
APO AE 09839-4902

(End of Clause)

G.3 CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR)

The Contracting Officer's Technical Representative is Francisco Zamora or his designee at:

USAID - Unit 64902
APO AE 09839-4902

Telephone: (00-2) 357-3397

(End of Clause)

G.4 TECHNICAL DIRECTIONS/RELATIONSHIP WITH USAID

(a) Technical Directions is defined to include:

(1) Written directions to the Contractor which fill in details, suggest possible lines of inquiry, or otherwise facilitate completion of work;

(2) Provision of written information to the Contractor which assists in the interpretation of drawings, specifications, or technical portions of the work statement;

(3) Review and, where required, provide written approval of technical reports, drawings, specifications, or technical information to be delivered.

Technical directions must be in writing, and must be within the scope of the work as detailed in Section C.

(b) The COTR is authorized by designation to take any or all action with respect to the following which could lawfully be taken by the Contracting Officer, except any action specifically prohibited by the terms of this Contract:

(1) Assure that the Contractor performs the technical requirements of the contract in accordance with the contract terms, conditions, and specifications.

(2) Perform or cause to be performed, inspections necessary in connection with a) above and require the Contractor to correct all deficiencies; perform acceptance for the Government.

(3) Maintain all liaison and direct communications with the Contractor. Written communications with the Contractor and documents shall be signed as "Contracting Officer's Technical Representative" with a copy furnished to the Contracting Officer.

(4) Issue written interpretations of technical requirements of Government drawings, designs, and specifications.

(5) Monitor the Contractor's production or performance progress and notify the Contractor in writing of deficiencies observed during surveillance, and direct appropriate action to effect correction. Record and report to the Contracting Officer incidents of faulty or nonconforming work, delays or problems.

(6) Obtain necessary security clearance and appropriate identification if access to Government facilities is required. If to be provided, ensure that Government furnished property is available when required.

LIMITATIONS: The COTR is not empowered to award, agree to, or sign any contract (including delivery or purchase orders) or modifications thereto, or in any way to obligate the payment of money by the Government. The COTR may not take any action which may impact on the contract schedule, funds, scope or rate of utilization of LOE. All contractual agreements, commitments, or modifications which involve prices, quantities, quality, schedules shall be made only by the Contracting Officer.

(c) The COTR is required to meet quarterly with the Contractor and the Contracting Officer concerning performance of items delivered under this contract and any other administration or technical issues. Telephonic reports may be made if no problems are being experienced. Problem areas should be brought to the immediate attention of the Contracting Officer.

(d) In the absence of the designated COTR, the COTR may designate someone to serve as COTR in their place. However, such action to direct an individual to act in the COTR's stead shall

immediately be communicated to the Contractor and the Contracting Officer.

(e) Contractual Problems - Contractual problems, of any nature, that may arise during the life of the contract must be handled in conformance with specific public laws and regulations (i.e. Federal Acquisition Regulation and Agency for International Development Acquisition Regulation). The Contractor and the COTR shall bring all contracting problems to the immediate attention of the Contracting Officer. Only the Contracting Officer is authorized to formally resolve such problems. The Contracting Officer will be responsible for resolving legal issues, determining contract scope and interpreting contract terms and conditions. The Contracting Officer is the sole authority authorized to approve changes in any of the requirements under this contract. Notwithstanding any clause contained elsewhere in this contract, the said authority remains solely with the Contracting Officer. These changes include, but will not be limited to the following areas: scope of work, price, quantity, technical specifications delivery schedules, and contract terms and conditions. In the event the Contractor effects any changes at the direction of any other person other than the Contracting Officer, the change will be considered to have been made without authority.

(f) Failure by the Contractor to report to the Administrative Contracting Office, any action by the Government considered to a change, within the specified number of days contained in FAR 52.243-7 (Notification of Changes), waives the Contractor's right to any claims for equitable adjustments.

(End of Clause)

G.5 PAYING OFFICE

The paying office for this contract is:

Office of Financial Management
USAID Unit 64902
APO AE 09839-4902

(End of Clause)

G.6 ACCOUNTING AND APPROPRIATION DATA

| | |
|---|---|
| MAARD No.: | 263-0242-3-94132 |
| Appropriation Symbol: | 724/51037 |
| Budget Plan Code: | HES4-95-23263-IG13 |
| Amount Obligated: | $1,186,540 |
| | |
| MAARD No.: | 263-0242-3-94132 |
| Appropriation Symbol: | 725/61037 |
| Budget Plan Code: | HES5-95-23263-KG13 |
| Amount Obligated: | $2,000,000 |
| | |
| MAARD No.: | 263-0242-3-94132 |
| Appropriation Symbol: | 726/71037 |
| Budget Plan Code: | HES6-96-23263-KG13 |

Amount Obligated: $1,813,460

[END OF SECTION G]

## SECTION H - SPECIAL CONTRACT REQUIREMENTS

**H.1 AIDAR 752.7032 INTERNATIONAL TRAVEL APPROVAL AND NOTIFICATION REQUIREMENTS AND AIDAR 752.7027 PERSONNEL**

In accordance with the above clauses, the Contracting Officer hereby provides prior written approval for international travel, provided that concurrence with the assignment of individuals outside the United States is obtained by the Contractor, in writing, from the COTR prior to their assignment abroad, which must be within the terms of this contract, is subject to availability of funds, and should not be construed as authorization either to increase the estimated cost or to exceed the obligated amount (see Section B). The Contractor shall retain for audit purposes a copy of each travel concurrence.

[End of Clause]

**H.2 INSURANCE AND SERVICES**

(a) Pursuant to AIDAR 752.228-3 Worker's Compensation Insurance (Defense Base Act), USAID's DBA insurance carrier is:

Wright and Company
1100 I St., NW, Suite [illegible]
Washington, DC 20005
Telephone (202) 283-[illegible], or [illegible] outside the Washington area (toll free)
Telefax (202) 275-[illegible]

(b) Pursuant to AIDAR 752.228-70 Medical Evacuation (MEDEVAC) Services, USAID's Medevac service provider is:

Medex Assistance Corporation
P.O. Box 5375
Timonium, MD 21094-5375
Telephone: (410) 453-6300 in Maryland;
or (800) 537-2029 (toll-free)
Telefax: (410) 453-6301

Applicants should request coverage in accordance with USAID Contract No. FAO-0000-Q-00-2041-00

Medevac services costs are allowable as a direct cost.

[End of Clause]

**H.3 AUTHORIZED GEOGRAPHIC CODE**

The authorized geographic code for procurement of goods and services under this contract is 000.

[End of Clause]

**H.4 LOGISTIC SUPPORT**

The Contractor shall be responsible for furnishing all logistic support in the United States and overseas.

[End of Clause]

H.5 PERSONNEL COMPENSATION

(a) Definitions

As used herein, the terms "salaries," "wages" and "compensation" mean the periodic remuneration received for professional or technical services rendered, exclusive of any of the differentials or allowances defined in the clause of this contract entitled "Differentials and Allowances" (AIDAR 752.7028), unless otherwise stated. The term "compensation" includes payments for personal services (including fees and honoraria). It excludes earnings from sources other than the individual's professional or technical work, overhead, or other charges (see also the clause of this contract entitled "Personnel Compensation" (AIDAR 752.7007))

(b) Limitations

Compensation of personnel which is charged as a direct cost under this contract, like other costs, will be reimbursable in accordance Section B of this contract, and the clause of this contract entitled "Allowable Cost and Payment" (FAR 52.216-07) and other applicable provisions of this contract, but subject to the following additional specified understandings which set limits on items which otherwise might be reasonable, allocable, and allowable.

(c) Approvals

Salaries and wages may not exceed the Contractor's established policy and practice, including the Contractor's established pay scale for equivalent classifications of employees, which will be certified to by the Contractor. There is a ceiling on reimbursable salaries and wages paid to a person employed directly under the contract of the ES-6 salary rate threshold (or the equivalent daily rate of the ES-6 salary threshold, if compensation is not on an annual basis), unless advance written approval is given by the Contracting Officer. Note: The daily rate of ES-6 is determined by dividing the annual salary by 260.

(d) Salaries During Travel

Salaries and wages paid while in travel status will not be reimbursed for a travel period greater than the time required for travel by the most direct and expeditious air route.

(e) Return of Overseas Employees

Salaries and wages paid to an employee serving overseas who is discharged by the Contractor for misconduct, inexcusable nonperformance, or security reasons will in no event be reimbursed for a period which extends beyond the time required to return him promptly to his point of origin by the most direct and expeditious air route.

(f) Annual Salary Increases

Annual salary increases may not exceed those provided by the Contractor's established policy and practice. Salary increases of any kind which would result in compensation which exceeds the maximum salary of ES-6 may be granted only with the advance written approval of the Contracting Officer.

(g) Consultants

The use of consultants is authorized under this contract. Fees paid to consultants and reimbursed hereunder shall be reasonable in accordance with FAR cost principles set forth at 31.205-33 entitled "Professional and Consultant Costs," and subject to the ES-6 salary threshold.

(h) Initial Salaries

Initial salaries shall be determined in accordance with the approved contractor's personnel policies. The salaries shall be commensurate with the position to be filled. However, initial salaries of any kind exceeding the maximum salary of ES-6 may be granted only with the advance written approval of the Contracting Officer.

The contractor shall be responsible for managing the staffing level and salaries for the performance of this contract. Copies of changes and updates to the contractor's personnel policies shall be submitted to the Contracting Officer for review.

(i) TCN/CCN Compensation

Compensation, including merit or promotion increases paid to Third Country Nationals (TCNs) or Cooperating Country Nationals (CCNs) may not, without the approval of the Mission Director, exceed the prevailing compensation paid to personnel performing comparable work in the cooperating country as determined by the USAID mission. Unless otherwise authorized by the Mission Director, the compensation of such TCN or CCN employees shall be paid in the currency of the cooperating country.

(j) Work Week

**Non-overseas Employee.** The work week for the Contractor's non-overseas employees shall not be less than the established practice of the Contractor.

**Overseas Employee.** The work week for the Contractor's overseas employees shall not be less than 40 hours and shall be scheduled to coincide with the work week for those employees of the USAID Mission and the Cooperating Country associated with the work of this contract.

H.6 SUBCONTRACTING PLAN AND THE SF 294 - SUBCONTRACTING REPORT FOR INDIVIDUAL CONTRACTS AND SF 295 - SUMMARY CONTRACTING REPORT

The Contractor's subcontracting plan dated December 24, 1997 is hereby incorporated as a material part of this contract.

In accordance with FAR 52.219-9, SF 294 and SF 295 should be forwarded to the following address:

U.S. Agency for International Development
Office of Small and Disadvantaged Business
Utilization
SA-14, Room 1200I
Washington, D.C. 20523

[End of Clause]

H.7 SMALL GRANT PROGRAM

At the time of contract award, the Contractor and USAID shall enter into an agreement concerning Grants under Contract substantially similiar to the sample agreement in Attachment J.2 in order for the Contractor to carry out Task Ten (Sec. C.8.1) during the base period and Task Seven (Sec. C.10.7) during the option period. The Contracting Officer will provide sample grant formats to the Contractor at that time.

Grants under this contract shall not finance:

1) international travel and transportation;
2) commodities (commodities necessary to support activities under the Small Grant Program shall be procured by the Contractor under the Commodity Procurement Program (Sections C.9.2 and C.10.8));
3) subgrants, and
4) participant training.

In addition, no grant financed under this contract shall exceed $25,000.

[End of Clause]

[END OF SECTION H]

PART II - CONTRACT CLAUSES

SECTION I - CONTRACT CLAUSES

I.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far and http://www.info.usaid.gov

1. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.202-1 | DEFINITIONS | OCT 1995 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | APR 1984 |
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | JUL 1995 |
| 52.203-7 | ANTI-KICKBACK PROCEDURES | JUL 1995 |
| 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | JAN 1997 |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | JUN 1997 |
| 52.204-4 | PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER | JUN 1996 |
| 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | JUL 1995 |
| 52.211-5 | MATERIAL REQUIREMENTS | OCT 1997 |
| 52.212-4 | CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS | MAY 1997 |
| 52.215-2 | AUDIT AND RECORDS--NEGOTIATION | AUG 1996 |
| 52.215-8 | ORDER OF PRECEDENCE--UNIFORM CONTRACT FORMAT | OCT 1997 |
| 52.215-11 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS | OCT 1997 |
| 52.215-13 | SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS | OCT 1997 |
| 52.215-14 | INTEGRITY OF UNIT PRICES | OCT 1997 |
| 52.215-15 | TERMINATION OF DEFINED BENEFIT PENSION PLANS | OCT 1997 |
| 52.215-17 | WAIVER OF FACILITIES CAPITAL COST OF MONEY | OCT 1997 |
| 52.215-18 | REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS | OCT 1997 |
| 52.216-8 | FIXED FEE | MAR 1997 |
| 52.217-2 | CANCELLATION UNDER MULTIYEAR CONTRACTS | OCT 1997 |

| | | |
|---|---|---|
| 52.219-8 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS | JUN 1997 |
| 52.219-9 | SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN Alternate II (MAR 1996) | AUG 1996 |
| 52.219-16 | LIQUIDATED DAMAGES--SUBCONTRACTING PLAN | OCT 1995 |
| 52.222-20 | WALSH-HEALEY PUBLIC CONTRACTS ACT | DEC 1996 |
| 52.222-26 | EQUAL OPPORTUNITY | APR 1984 |
| 52.222-28 | EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS | APR 1984 |
| 52.222-29 | NOTIFICATION OF VISA DENIAL | APR 1984 |
| 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS Alternate 1 (APR 1984) | APR 1984 |
| 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA | JAN 1988 |
| 52.223-2 | CLEAN AIR AND WATER | APR 1984 |
| 52.223-6 | DRUG-FREE WORKPLACE | JAN 1997 |
| 52.223-14 | TOXIC CHEMICAL RELEASING REPORTING | OCT 1996 |
| 52.225-9 | BUY AMERICAN ACT - TRADE AGREEMENTS - BALANCE OF PAYMENTS PROGRAM | JAN 1996 |
| 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | OCT 1996 |
| 52.227-1 | AUTHORIZATION AND CONSENT | JUL 1995 |
| 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT | AUG 1996 |
| 52.228-7 | INSURANCE - LIABILITY TO THIRD PERSONS | MAR 1996 |
| 52.228-9 | CARGO INSURANCE | JAN 1997 |
| 52.230-3 | DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES | APR 1996 |
| 52.230-6 | ADMINISTRATION OF COST ACCOUNTING STANDARDS | APR 1996 |
| 52.232-17 | INTEREST | JUN 1996 |
| 52.232-22 | LIMITATION OF FUNDS | APR 1984 |
| 52.232-23 | ASSIGNMENT OF CLAIMS | JAN 1986 |
| 52.232-25 | PROMPT PAYMENT | JUN 1997 |
| 52.232-33 | MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT | AUG 1996 |
| 52.233-1 | DISPUTES | OCT 1995 |
| 52.233-3 | PROTEST AFTER AWARD Alternate I (JUN 1985) | AUG 1996 |
| 52.237-9 | WAIVER OF LIMITATION ON SEVERANCE PAYMENTS TO FOREIGN NATIONALS | OCT 1995 |
| 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS | APR 1984 |
| 52.242-3 | PENALTIES FOR UNALLOWABLE COSTS | OCT 1995 |
| 52.242-13 | BANKRUPTCY | JUL 1995 |
| 52.243-2 | CHANGES - COST-REIMBURSEMENT | AUG 1987 |
| 52.244-2 | SUBCONTRACTS (COST-REIMBURSEMENT AND LETTER CONTRACTS) | OCT 1997 |
| 52.244-5 | COMPETITION IN SUBCONTRACTING | DEC 1996 |
| 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS | |

| | | |
|---|---|---|
| | AND COMMERCIAL COMPONENTS | OCT 1995 |
| 52.245-5 | GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME-AND-MATERIAL, OR LABOR-HOUR CONTRACTS) | JAN 1986 |
| 52.246-25 | LIMITATION OF LIABILITY-SERVICES | APR 1984 |
| 52.247-63 | PREFERENCE FOR U.S.-FLAG AIR CARRIERS | JAN 1997 |
| 52.247-64 | PREFERENCE FOR PRIVATELY OWNED U.S.-FLAG COMMERCIAL VESSELS Alternate I (APR 1984) | JUN 1997 |
| 52.247-67 | SUBMISSION OF COMMERCIAL TRANSPORTATION BILLS TO THE GENERAL SERVICES ADMINISTRATION FOR AUDIT | JUN 1997 |
| 52.249-6 | TERMINATION (COST-REIMBURSEMENT) | SEP 1996 |
| 52.249-14 | EXCUSABLE DELAYS | APR 1984 |
| 52.251-1 | GOVERNMENT SUPPLY SOURCES | APR 1984 |
| 52.253-1 | COMPUTER GENERATED FORMS | JAN 1991 |

I. AID ACQUISITION REGULATION (48 CFR CHAPTER 7) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| 752.202-1 | AID DEFINITIONS CLAUSE--SUPPLEMENT FOR AID CONTRACTS INVOLVING PERFORMANCE OVERSEAS Alternate 72 | DEC 1986 |
| 752.209-71 | ORGANIZATIONAL CONFLICTS OF INTEREST DISCOVERED AFTER AWARD | JUN 1993 |
| 752.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS | AUG 1996 |
| 752.228-3 | WORKER'S COMPENSATION INSURANCE (DEFENSE BASE ACT) | |
| 752.228-7 | INSURANCE--LIABILITY TO THIRD PERSONS | |
| 752.228-9 | CARGO INSURANCE | |
| 752.228-70 | MEDICAL EVACUATION (MEDEVAC) SERVICES | |
| 752.245-70 | GOVERNMENT PROPERTY | |
| 752.245-71 | TITLE TO AND CARE OF PROPERTY | APR 1984 |
| 752.7001 | BIOGRAPHICAL DATA | DEC 1990 |
| 752.7002 | TRAVEL AND TRANSPORTATION | JAN 1990 |
| 752.7006 | NOTICES | AUG 1996 |
| 752.7007 | PERSONNEL COMPENSATION | JUL 1996 |
| 752.7008 | USE OF GOVERNMENT FACILITIES OR PERSONNEL | APR 1984 |
| 752.7010 | CONVERSION OF U.S. DOLLARS TO LOCAL CURRENCY | APR 1984 |
| 752.7011 | ORIENTATION AND LANGUAGE TRAINING | APR 1984 |
| 752.7013 | CONTRACTOR-MISSION RELATIONSHIPS | OCT 1989 |
| 752.7014 | NOTICE OF CHANGES IN TRAVEL REGULATIONS | JAN 1990 |
| 752.7015 | USE OF POUCH FACILITIES | JUN 1991 |
| 752.7016 | FAMILY PLANNING AND POPULATION ASSISTANCE ACTIVITIES | AUG 1986 |
| 752.7025 | APPROVALS | APR 1984 |
| 752.7027 | PERSONNEL | DEC 1990 |

| | | |
|---|---|---|
| 752.7028 | DIFFERENTIALS AND ALLOWANCES | JUL 1996 |
| 752.7029 | POST PRIVILEGES | JUL 1993 |
| 752.7031 | LEAVE AND HOLIDAYS | OCT 1989 |
| 752.7032 | INTERNATIONAL TRAVEL APPROVAL AND NOTIFICATION REQUIREMENTS | JAN 1990 |
| 752.7033 | PHYSICAL FITNESS | JUL 1993 |
| 752.7034 | ACKNOWLEDGEMENT AND DISCLAIMER | DEC 1991 |

(End of Clause)

I.2 52.203-8 CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)

(a) If the Government receives information that a contractor or a person has engaged in conduct constituting a violation of subsection (a), (b), (c), or (d) of Section 27 of the Office of Federal Procurement Policy Act (41 U.S.C. 423) (the Act), as amended by section 4304 of the 1996 National Defense Authorization Act for Fiscal Year 1996 (Pub. L. 104-106), the Government may--

(1) Cancel the solicitation, if the contract has not yet been awarded or issued; or

(2) Rescind the contract with respect to which--

(i) The Contractor or someone acting for the Contractor has been convicted for an offense where the conduct constitutes a violation of subsection 27 (a) or (b) of the Act for the purpose of either--

(A) Exchanging the information covered by such subsections for anything of value; or

(B) Obtaining or giving anyone a competitive advantage in the award of a Federal agency procurement contract; or

(ii) The head of the contracting activity has determined, based upon a preponderance of the evidence, that the Contractor or someone acting for the Contractor has engaged in conduct constituting an offense punishable under subsections 27(e)(1) of the Act.

(b) If the Government rescinds the contract under paragraph (a) of this clause, the Government is entitled to recover, in addition to any penalty prescribed by law, the amount expended under the contract.

(c) The rights and remedies of the Government specified herein are not exclusive, and are in addition to any other rights and remedies provided by law, regulation, or under this contract.

I.3 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (AUG 1996)

(a) The Contractor agrees to comply with the following FAR clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.222-3, Convict Labor (E.O. 11755); and

(2) 52.233-3, Protest After Award (31 U.S.C 3553).

(b) The Contractor agrees to comply with the FAR clauses in this paragraph (b) which the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items or components:

(1) 52.203-6, Restrictions on Subcontractor Sales to the Government, with Alternate I (41 U.S.C. 253g and 10 U.S.C. 2402).

(2) 52.203-10, Price or Fee Adjustment for Illegal or Improper Activity (41 U.S.C. 423).

(3) 52.219-8, Utilization of Small Business Concerns and Small Disadvantaged Business Concerns (15 U.S.C. 637 (d)(2) and (3));

(4) 52.219-9, Small, Small Disadvantaged and Women Owned Small Business Subcontracting Plan (15 U.S.C. 637 (d)(4));

(5) 52.219-14, Limitation on Subcontracting (15 U.S.C 637(a)(14)).

(6) 52.222-26, Equal Opportunity (E.O. 11246).

(7) 52.222-35, Affirmative Action for Special Disabled and Vietnam Era Veterans (38 U.S.C. 4212).

(8) 52.222-36, Affirmative Action for Handicapped Workers (29 U.S.C. 793).

(9) 52.222-37, Employment Reports on Special Disabled Veterans and Veterans of the Vietnam Era (38 U.S.C. 4212).

(10) 52.225-3, Buy American Act-Supplies (41 U.S.C. 10).

(11) 52.225-9, Buy American Act-Trade Agreements Act-Balance of Payments Program (41 U.S.C. 10, 19 U.S.C. 2501-2582).

____ (12) Reserved.

(13) 52.225-18, European Union Sanction for End Products (E.O. 12849).

(14) 52.225-19, European Union Sanction for Services (E.O. 12849).

## USAID APPROVALS TO SUB-CONTRACTS

| Tender | Commodity | PO # | Date | Vendor | Qty | Unit $ | Total $ | Document | Date |
|---|---|---|---|---|---|---|---|---|---|
| BASE PERIOD | | | | | | | | | |
| IFB 3 | Incubator, Intensive Care Hillrom 83A1A1 | 68 | 16-Dec-99 | UUM | 7 | 9,179.28 | 64,254.96 | Russell/Gipson letter | Jan-18-00 |
| | Incubator, Normal Care Hillrom C400QT | 68 | 16-Dec-99 | UUM | 23 | 7,920.00 | 182,160.00 | | |
| IFB 8 | Incubator, Intensive Care -Medicare Model # 605-1460500 | 205A | 25-Nov-01 | ICS | 7 | 7,935.10 | 55,545.70 | Judge/Gipson letter | Nov-29-01 |
| | | 205 | 10-Apr-01 | ICS | 25 | 7,935.10 | 198,377.50 | Judge/Gipson letter | Jun-11-01 |
| | Incubator, Normal Care Medicare Model 605-1460430 | 205A | 25-Nov-01 | ICS | 18 | 6,114.45 | 110,060.10 | Judge/Gipson letter | Nov-29-01 |
| | | 205 | 10-Apr-01 | ICS | 69 | 6,114.45 | 421,897.05 | Judge/Gipson letter | Jun-11-01 |
| IFB 9 | Incubator (Portable) | 202 | 4-Mar-01 | ICS | 30 | 9,331.04 | 279,931.20 | Judge/Gipson letter | Jun-11-01 |
| | | 202A | 25-Nov-01 | ICS | 8 | 9,331.04 | 74,648.32 | | |
| OPTION PERIOD | | | | | | | | | |
| IFB 12 | Incubator, Normal Care, Ohmeda 3000 Double Wall | 354 | 7-Nov-02 | ARJ-MED | 34 | 5,621.00 | 191,114.00 | Judge/Gipson letter | Oct-20-02 |
| IFB 13 | Incubator, Normal Care, Hillrom Double Wall C450 w/2 Humidifiers | 504 | 5-Nov-03 | ICS | 72 | 6,718.32 | 483,718.79 | Taylor/Gipson letter | Oct-28-03 |
| RFQ 0597 | Incubator, Normal Care, Ohmeda 3000 Double Wall | 639 | 11-Aug-04 | OHMEDA | 15 | 6,500.00 | 97,500.00 | No USAID approval required under $100K | |
| RFQ 0598 | Incubator, Portable | 655 | 16-Aug-04 | OHMEDA | 1 | 13,288.54 | 13,288.54 | No USAID approval required under $100K | |

(15) (i) 52.225-21, Buy American Act-North American Free Trade Agreement Implementation Act-Balance of Payments Program (41 U.S.C 10, Pub. L. 103-187).

___ (ii) Alternate I of 52.225-21.

(16) 52.239-1, Privacy or Security Safeguards (5 U.S.C. 552a).

X (17) 52.247-64, Preference for Privately Owned U.S.- Flag Commercial Vessels (46 U.S.C. 1241).

(c) The Contractor agrees to comply with the FAR clauses in this paragraph (c), applicable to commercial services, which the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items or components:

(1) 52.222-41, Service Contract Act of 1965, As amended (41 U.S.C. 351, et seq.).

(2) 52.222-42, Statement of Equivalent Rates for Federal Hires (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

(3) 52.222-43, Fair Labor Standards Act and Service Contract Act-Price Adjustment (Multiple Year and Option Contracts) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

(4) 52.222-44, Fair Labor Standards Act and Service Contract Act-Price Adjustment (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

(5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreement (CBA) (41 U.S.C. 351, et seq.).

(d) Comptroller General Examination of Record. The Contractor agrees to comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records--Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made

available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) or (d) of this clause, the Contractor is not required to include any FAR clause, other than those listed below (and as may be required by an addenda to this paragraph to establish the reasonableness of prices under Part 15), in a subcontract for commercial items or commercial components--

(1) 52.222-26, Equal Opportunity (E.O. 11246);

(2) 52.222-35, Affirmative Action for Special Disabled and Vietnam Era Veterans (38 U.S.C. 2012(a)); and

(3) 52.222-36, Affirmative Action for Handicapped Workers (29 U.S.C. 793).

(4) 52.247-64, Preference for Privately Owned U.S.-Flagged Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996).

I.4 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the Schedule.

(End of Clause)

I.5 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 1989)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 7 years.

[End of Clause]

I.6 PAYMENT FOR OVERTIME PREMIUMS

In accordance with FAR 52.222.2, Payment for Overtime Premiums, the use of overtime is authorized if the overtime premium cost does not exceed $0.00. Notwithstanding the above, premium pay shall be an allowable cost for Cooperating Country Nationals if required by Egyptian law.

[End of Clause]

I.7 52.222-35 AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (APR 1984) (DEVIATION)

(a) Definitions

"Appropriate office of the State employment service system," as used in this clause, means the local office of the Federal-state national system of public employment offices with assigned responsibility for serving the area where the employment opening is to be filled, including the District of Columbia, Guam, the Commonwealth of Puerto Rico, and the Virgin Islands.

"Positions that will be filled from within the Contractor's organization," as used in this clause, means employment openings for which no consideration will be given to persons outside the Contractor's organization (including any affiliates, subsidiaries, and the parent companies) and includes any openings that the Contractor proposes to fill from regularly established "recall" lists.

"Employment openings," used in this clause, includes full-time employment, temporary employment of over 3 days, and part-time employment, but does not include (1) executive and top management positions, (2) positions that will be filled from within the Contractor's organization or under a customary and traditional employer-union hiring arrangement, or (3) openings in an educational institution that are restricted to students of that institution.

(b) General. (1) Regarding any position for which the employee or applicant for employment is qualified, the Contractor shall not discriminate against the individual because the individual is a special disabled or Vietnam Era veteran. The Contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified special disabled and Vietnam Era veterans without discrimination based upon their disability or veterans' status in all employment practices such as:

(i) Employment;

(ii) Upgrading

(iii) Demotion or transfer;

(iv) Recruitment;

(v) Advertising;

(vi) Layoff or termination;

(vii) Rates of pay or other forms of compensation; and

(viii) Selection for training, including apprenticeship

(2) The Contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (the Act), as amended.

(c) Listing openings. (1) The Contractor agrees to list all employment openings existing at contract award or occurring during contract performance, at an appropriate office of the State employment service system in the locality where the opening occurs. These openings include those occurring at any Contractor facility, including one not connected with performing this contract. An independent corporate affiliate is exempt from this requirement.

(2) State and local government agencies holding Federal contracts of $10,000 or more shall also list all their openings with the appropriate office of the State employment service.

(3) The listing of employment openings with the State employment service system is required at least concurrently with using any other recruitment source or effort and involves the obligations of placing a bona fide job order, including accepting referrals of veterans and nonveterans. This listing does not require hiring any particular group of job applicants and is not intended to relieve the Contractor from any requirements of Executive orders or regulations concerning nondiscrimination in employment.

(4) Whenever the Contractor becomes contractually bound to the listing terms of this clause, it shall advise the State employment service system, in each State where it has establishments, of the name and location of each hiring location in the State. As long as the Contractor is contractually bound to these terms and has so advised the State system, it need not advise the State system of subsequent contracts. The Contractor may advise the State system when it is no longer bound by this contract clause.

(5) Under the most compelling circumstances, an employment

opening may not be suitable for listing, including situations when (i) the Government's needs cannot reasonably be supplied, (ii) listing would be contrary to national security, or (iii) the requirement of listing would not be in the Government's interest.

(d) Applicability. (1) This clause does not apply to the listing of employment openings which occur and are filled outside the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, and the Virgin Islands.

(2) The terms of paragraph (c) above of this clause do not apply to openings that the Contractor proposes to fill from within its own organization or under a customary and traditional employer-union hiring arrangement. This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of its own organization or employer-union arrangement for that opening.

(e) Postings. (1) The Contractor agrees to post employment notices stating (i) the Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era, and (ii) the rights of applicants and employees.

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Director, Office of Federal Contract Compliance Programs, Department of Labor (Director), and provided by or through the Contracting Officer.

(3) The Contractor shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the Contractor is bound by the terms of the Act, and is committed to take affirmative action to employ, and advance in employment, qualified special disabled and Vietnam Era veterans.

(f) Noncompliance. If the Contractor does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Act.

(g) Subcontracts. The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary. The Contractor shall act as specified by the Director to enforce the terms, including action for noncompliance.

[End of Clause]

I.8 52.227-23 RIGHTS TO PROPOSAL DATA (TECHNICAL) (JUN 1987)

Except for data contained on pages N/A, it is agreed that as a condition of award of this contract, and notwithstanding the conditions of any notice appearing thereon, the Government shall have unlimited rights (as defined in the Rights in Data--General" clause contained in this contract) in and to the technical data contained in the proposal dated December 24, 1997, upon which this contract is based.

[End of Clause]

I.9 52.228-3 WORKERS' COMPENSATION INSURANCE (DEFENSE BASE ACT) (APR 1984)

The Contractor shall (a) provide, before commencing performance under this contract, such workers' compensation insurance or security as the Defense Base Act (42 U.S.C. 1651 et seq.) requires and (b) continue to maintain it until performance is completed. The Contractor shall insert, in all subcontracts under this contract to which the Defense Base Act applies, a clause similar to this clause (including this sentence) imposing upon those subcontractors this requirement to comply with the Defense Base Act.

[End of Clause]

I.10 52.229-8 TAXES--FOREIGN COST-REIMBURSEMENT CONTRACTS (MAR 1990)

(a) Any tax or duty from which the United States Government is exempt by agreement with the Government of Egypt, or from which the Contractor or any subcontractor under this contract is exempt under the laws of Egypt, shall not constitute an allowable cost under this contract.

(b) If the Contractor or subcontractor under this contract obtains a foreign tax credit that reduces its Federal income tax liability under the United States Internal Revenue Code (Title 26, U.S.C.) because of the payment of any tax or duty that was reimbursed under this contract, the amount of the reduction shall be paid or credited at the time of such offset to the Government of the United States as the Contracting Officer directs.

[End of Clause]

I.11 52.242-4 CERTIFICATION OF FINAL INDIRECT COSTS (JAN 1997)

(a) The Contractor shall--

(1) Certify any proposal to establish or modify final indirect cost rates;

(2) Use the format in paragraph (c) of this clause to certify; and

(3) Have the certificate signed by an individual of the Contractor's organization at a level no lower than a vice

president or chief financial officer of the business segment of the Contractor that submits the proposal.

(b) Failure by the Contractor to submit a signed certificate, as described in this clause, may result in final indirect costs at rates unilaterally established by the Contracting Officer.

(c) The certificate of final indirect costs shall read as follows:

CERTIFICATE OF FINAL INDIRECT COSTS

This is to certify that I have reviewed this proposal to establish final indirect cost rates and to the best of my knowledge and belief:

1. All costs included in this proposal (identify proposal and date) to establish final indirect costs rates for (identify period covered by rate) are allowable in accordance with the cost principles of the Federal Acquisition Regulation (FAR) and its supplements applicable to the contracts to which the final indirect cost rates will apply; and

2. This proposal does not include any costs which are expressly unallowable under applicable cost principles of the FAR or its supplements.

Firm: ______________________________

Signature: ______________________________

Name of Certifying Official: ______________________________

Title: ______________________________

Date of Execution: ______________________________

[End of Clause]

I.12 NOTIFICATION OF CHANGES

In accordance with FAR 52.243-7, Notification of Changes, the Contractor shall notify the Contracting Officer in writing promptly, within 10 calendar days from the date that the Contractor identifies any Government conduct that the Contractor regards as a change to the contract terms and conditions. The Contracting Officer shall promptly, within 15 calendar days after receipt of notice, respond to the notice in writing.

[End of Clause]

I.13 52.252-4 ALTERATIONS IN CONTRACT (APR 1984)

Portions of this contract are altered as follows:

(a) AIDAR 752-7007, Personnel Compensation (AUG 1984), is amended to delete reference to the "Foreign Service Officer Class

"FS-1" and insert "Foreign Service Officer Class FS-6".

[End of Clause]

I.14 52.252-6 AUTHORIZED DEVIATIONS IN CLAUSES (APR 1984)

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(b) The use in this solicitation or contract of any Agency for International Development Acquisition Regulation clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of Clause)

I.15 COMMUNICATIONS PRODUCTS (OCT 1994)

(a) Definition - Communications products are any printed materials (other than non-color photocopy material), photographic services or video production services.

(b) Standards - USAID has established standards for communications products. These standards must be followed unless otherwise specifically provided in the contract or approved in writing by the contracting officer. A copy of the standards for USAID financed publications and video productions is attached.

(c) Communications products which meet any of the following criteria are not eligible for USAID financing under this agreement unless specifically authorized in the contract or in writing by the contracting officer:

(1) All communications materials funded by operating expense account funds;

(2) Any communication products costing over $25,000, including the costs of both preparation and execution. For example, in the case of a publication, the costs will include research, writing and other editorial services (including any associated overhead), design, layout and production costs.

(3) Any communication products that will be sent directly to, or likely to be seen by, a Member of Congress or Congressional staffer; and

(4) Any publication that will have more than 50 percent of its copies distributed in the United States (excluding copies provided to CDIE and other USAID/W offices for internal use.

(d) The initial proposal must provide a separate estimate of the cost of every communications product as defined in paragraph (a) above (not just those which meet the criteria in paragraph

(c)] which is anticipated under the contract. Each estimate must include all of the costs associated with preparation and execution of the product. Any subsequent request for approval of a covered communication product must provide the same type of cost information.

[End of Clause]

I.16 752.225-70 SOURCE, ORIGIN AND NATIONALITY REQUIREMENTS (FEB 1997)

(a) Except as may be specifically approved by the Contracting Officer, all commodities (e.g., equipment, materials, vehicles, supplies) and services (including commodity transportation services) which will be financed under this contract with U.S. dollars shall be procured in accordance with the requirements in 22 CFR Part 228, "Rules on Source, Origin and Nationality for Commodities and Services Financed by USAID." The authorized source for procurement is Geographic Code 000 unless otherwise specified in the schedule of this contract. Guidance on eligibility of specific goods or services may be obtained from the Contracting Officer.

(b) Ineligible goods and services. The Contractor shall not procure any of the following goods or services under this contract:

(1) Military equipment
(2) Surveillance equipment
(3) Commodities and services for support of police and other law enforcement activities
(4) Abortion equipment and services
(5) Luxury goods and gambling equipment, or
(6) Weather modification equipment.

(c) Restricted goods. The Contractor shall not procure any of the following goods or services without the prior written approval of the Contracting Officer:

(1) Agricultural commodities,
(2) Motor vehicles,
(3) Pharmaceuticals and contraceptive items
(4) Pesticides,
(5) Fertilizer,
(6) Used equipment, or
(7) U.S. government-owned excess property.

If USAID determines that the Contractor has procured any of these specific restricted goods under this contract without the prior written authorization of the Contracting Officer, and has received payment for such purposes, the Contractor agrees to refund to USAID the entire amount of the purchase.

I.17 752.225-71 LOCAL PROCUREMENT (FEB 1997)

(a) Local procurement involves the use of appropriated funds to finance the procurement of goods and services supplied by local businesses, dealers or producers, with payment normally being in the currency of the cooperating country.

(b) All locally-financed procurements must be covered by source/origin and nationality waivers as set forth in Subpart F of 22 CFR Part 228 except as provided for in 22 CFR 228.40, Local

procurement.

[End of Clause]

[END OF SECTION I]

Contract: 263-C-00-98-00041-00
John Snow, Inc.
Page 93 of 109

APPENDIX J.1.

# PERFORMANCE MILESTONE PLAN

Base Period –3/15/98 - 9/15/01

**Result 5.1.1 Quality of Essential Maternal, Perinatal and Child Health Services Improved**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1 Qtr. 2 | · 1 HM/HC Package Consensus Meeting held and package finalized | · Submission of Consensus Meeting Report to MHP and USAID | · MOHP and USAID approval of Consensus Meeting Report | · Consensus Meeting Attendance | $19,840 |
| Qtr. 4 | · Lead Trainers trained for 5 districts and package implemented in 5 districts | · Training Report submitted to MOHP/USAID; MHIS forms record service del.and util. data | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify Trainings and delivery of basic package | $26,560 |
| Yr. 2 Qtr. 2 | · HM/HC curricula taught in 2 medical and 2 nursing schools | · Submission of curricula to MOHP and USAID; course evaluation collected | · Analysis of course evaluation; MOHP and USAID approval of curricula | · Observation of Instructor training and classroom instruction | $26,560 |
| Qtr. 4 | · Implementation of basic package in 10 districts | · MHIS forms record service delivery and utilization data | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $19,840 |
| Yr. 3 Qtr. 2 | · HM/HC curricula taught in 6 medical and 6 nursing schools | · Course evaluation forms collected from students | · Analysis of course evaluation | · Observation of Instructor training and classroom instruction | $26,560 |
| Qtr. 4 | · Implementation of basic package in 20 districts | · MHIS forms record service delivery and utilization | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $19,840 |
| Yr. 4 Qtr. 2 | · HM/HC curricula taught in 13 medical and 13 nursing schools | · Course evaluation forms collected from students | · Analysis of course evaluation | · Observation of Instructor training and classroom instruction | $26,560 |
| Qtr. 2 | · Implementation of basic package in 25 districts | · MHIS forms record service delivery and utilization | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $19,840 |

PERFORMANCE MILESTONE PLAN
Base Period -- 3/15/98 - 9/15/01

**Result 5.1.2. Districts Implementing Essential M, P & C Services in Target Governorates**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1 Qtr. 1 | · Commencement of MHIS Assessment | · Submission of MHIS Assessment Tool to MOHP and USAID | · MOHP and USAID approval of Assessment Tool | · Site visit to observe or verify MHIS assessment. | $26,560 |
| Qtr. 3 | · Completion of HM/HC management guidelines for district planning | · Submission of HM/HC Guidelines to MOHP/USAID | · MOHP and USAID approval of HM/HC Guidelines | · N/A | $19,840 |
| Yr. 2 Qtr. 1 | · Assist MOPH to establish 10 district MHIS centers. | · HM/HC quarterly reports document technical assistance to MOHP in 10 districts | · Review of HM/HC quarterly reports | · Field visits to observe district MHIS centers | $26,560 |
| Qtr. 3 | · 8 District health plans and monitoring systems developed and implemented | · Submission of D.H.P. to MOHP, MHIS reports document system functioning | · DHP approved by MOHP; analysis of MHIS reports | · Field visit to district to observe use of system | $19,840 |
| Yr. 3 Qtr. 1 | · Assist MOPH to establish 30 district MHIS centers | · HM/HC quarterly reports document technical assistance to MOHP in 30 districts | · Review of HM/HC quarterly reports | · Field visits to observe district MHIS centers | $26,560 |
| Qtr. 3 | · 20 District health plans and monitoring systems developed and implemented | · Submission of D.H.P. to MOHP, MHIS reports document system functioning | · DHP approved by MOHP; analysis of MHIS reports | · Field visit to district to observe use of system | $19,840 |
| Yr. 4 Qtr. 1 | · Assist MOPH to establish 65 district MHIS centers. | · HM/HC quarterly reports document technical assistance to MOHP in 65 districts | · Review of HM/HC quarterly reports | · Field visits to observe district MHIS centers | $26,560 |
| Qtr. 2 | · 25 District health plans and monitoring systems developed and implemented | · Submission of D.H.P. to MOHP, MHIS reports document system functioning | · DHP approved by MOHP, analysis of MHIS reports | · Field visit to district to observe use of system | $19,840 |

PERFORMANCE MILESTONE PLAN
Base Period -- 3/15/98 - 9/15/01

| Result 5.1.3. Established National Child Survival Program Sustained | | | | | |
|---|---|---|---|---|---|
| **Time** | **Milestone** | **Data Collection** | **Evaluation** | **Validation** | **Fee** |
| Yr. 1 Qtr. 2 | · Assessment of neonatal centers conducted | · Submission of Neonatal Center Assessment Report to MOHP and USAID | · MOHP and USAID approval of Neonatal Center Assessment Report | · Field visits to neonatal centers to verify assessment results | $26,560 |
| Qtr. 4 | · Completion of Egypt-specific integrated Sick Child Management Plan | · Plan submitted to MOHP and USAID | MOHP and USAID approval of Sick Child Mgmt. Plan | · N/A | $39,840 |
| Yr. 2 Qtr. 2 | · Daya training program modified and ready for implementation | · Submission of revised Daya Training Program to MOHP and USAID | · MOHP and USAID approval of revised Daya Training Program | · Field visit to Daya training site to verify appropriateness of training | $26,560 |
| Qtr. 4 | · 3 operations research studies completed | · 3 Research Reports submitted to MOHP and USAID | · Statistical analysis of research results | · Validation of study | $39,840 |
| Yr. 3 Qtr. 2 | · 1999/2000 Maternal Mortality Survey completed | · MMS results submitted to MOHP and USAID | · Statistical analysis of survey results | · Validation of study | $39,840 |
| Qtr. 4 | · 300 neonatal centers are linked with comprehensive perinatal programs in target districts | · MHIS shows evidence of linked services and referrals | · Analysis of MHIS reports | · Field visits to neonatal centers and district clinics | $26,560 |
| Yr. 4 Qtr. 2 | · ARI MIS in place in 27 governorates | · MHIS reports document system functioning | · Analysis of MHIS reports | · Field site visit to Governorates | $26,560 |
| Qtr. 4 | · EPI coverage rates above 90% in 25 target districts for all 7 vaccines | · EPI survey results document coverage rates | · Statistical analysis of EPI Survey | · Validation study | $39,840 |

# PERFORMANCE MILESTONE PLAN

Base Period – 3/15/98 - 9/15/01

| Supporting Activities – Small Grants Program and Commodity Procurement Program | | | | | |
|---|---|---|---|---|---|
| **Time** | **Milestone** | **Data Collection** | **Evaluation** | **Validation** | **Fee** |
| Yr. 1 Qtr. 2 | · Development of IM/HC Project Procurement Plan | · Submission of Procurement Plan to USAID | · Review and approval of Procurement Plan | · N/A | $26,560 |
| Qtr. 4 | · 20 small grants awarded to NGOs in target districts | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $39,840 |
| Yr. 2 Qtr. 2 | · Procurement of 15% of Project commodities | · Submission of invoices and receipts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodities | $26,560 |
| Qtr. 4 | · 55 small grants awarded to NGOs in target districts | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $39,840 |
| Yr. 3 Qtr. 2 | · Procurement of 50% of Project commodities | · Submission of invoices and reciepts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodities | $26,560 |
| Qtr. 4 | · 90 small grants awarded to NGOs in target districts | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $39,840 |
| Yr. 4 Qtr. 2 | · Procurement of 100% of Project commodities | · Submission of invoices and reciepts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodities | $26,560 |
| Qtr. 2 | · 100 small grants awarded to NGOs in 25 target districts | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $39,840 |

PERFORMANCE MILESTONE PLAN
Base Period – 3/15/98 - 9/15/01

**Result 5.1.4. Increased Knowledge and Improved Behavior in Households**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 1 | · Rapid Assessment of existing print and mass media conducted | · Assessment report submitted to MOHP and USAID | · MOHP and USAID approval of Assessment Report | · N/A | $26,560 |
| Qtr. 3 | · Field test of protocol for linking comm. groups with providers completed | · Protocol completed | · MOHP and USAID approval of protocol | · Field visit to verify use of protocol | $26,560 |
| Yr. 2, Qtr. 1 | · National IEC Strategy to support HM/HC developed | · Strategy document and budget completed and submitted to MOHP and USAID | · Strategy and budget approved by USAID and MOHP | · N/A | $39,840 |
| Qtr. 3 | · Needs identification tool implemented in 5 communities | · Implementation Report completed and submitted | · MOHP and USAID approve Implementation Report | · Field visit to observe needs identification process | $26,560 |
| Yr. 3, Qtr. 1 | · National IEC campaign developed | · Media reports documenting # of broadcasts, materials printed, community activities conducted | · Review and analysis of media reports | · Spot checks to verify media broadcast and availability of materials | $39,840 |
| Qtr. 3 | · Social Community Services offered in 20 districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field site visit to target communities | $39,840 |
| Yr. 4, Qtr. 1 | · FGM component integrated into overall HM/HC message package | · FGM Media report submitted to USAID and MOHP | · Review and analysis of FGM report | · Spot checks to verify inclusion of FGM messages | $26,560 |
| Qtr. 2 | · Social Community Services offered in 25 districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field visits to target communities | $39,840 |

## PERFORMANCE MILESTONE PLAN
### Option Period --9/16/01 - 3/15/05

| Time | Milestone | Data Collection | Evaluation | Validation | % of Fee |
|---|---|---|---|---|---|
| **Task One: Basic package of essential services established** | | | | | |
| Yr. 1, Qtr. 4 | · Basic HM/HC Packages are implemented in 45 districts | · MHIS forms record service delivery and utilization | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $33,840 |
| Yr. 2, Qtr.4 | · Basic HM/HC Packages are implemented in 65 districts | · MHIS forms record service delivery and utilization | Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $33,840 |
| Yr. 3, Qtr.4 | · Basic HM/HC Packages are implemented in 80 districts | · MHIS forms record service delivery and utilization | Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $33,840 |
| Yr. 4, Qtr.2 | · Basic HM/HC Packages are implemented in 85 districts | · MHIS forms record service delivery and utilization | · Analysis of MHIS data and comparison with Project targets | · Field visits to verify delivery of basic package | $33,840 |

| Task Two: Pre/in-service training system designed to disseminate standards | | | | | |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 4 | • District public and private health providers are trained in 45 new districts | • Results of competency-based training | • Analysis of training evaluation | • Field visits to observe training | $33,840 |
| Yr. 2, Qtr. 4 | • District public and private health providers are trained in 65 new districts | • Results of competency-based training | • Analysis of training evaluation | • Field visits to observe training | $33,840 |
| Yr. 3, Qtr. 4 | • District public and private health providers are trained in 80 new districts | • Results of competency-based training | • Analysis of training evaluation | • Field visits to observe training | $33,840 |
| Yr. 4, Qtr. 2 | • District public and private health providers are trained in 85 new districts | • Results of competency-based training | • Analysis of training evaluation | • Field visits to observe training | $33,840 |

| Task Three: Public and private providers in partnership with committees to manage district plans | | | | | |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 4 | • Implement health plans and monitoring systems in 45 new districts | • Submission of DHP to MOHP, MHIS reports document system functioning | DHP approved by MOHP; analysis of MHIS reforts | • Field visit to district to observe use of system | $33,840 |
| Yr. 2, Qtr.4 | • Implement health plans and monitoring systems in 65 new districts | • Submission of DHP to MOHP, MHIS reports document system functioning | DHP approved by MOHP; analysis of MHIS reforts | • Field visit to district to observe use of system | $33,840 |
| Yr. 3, Qtr.4 | • Implement health plans and monitoring systems in 80 new districts | • Submission of DHP to MOHP, MHIS reports document system functioning | • DHP approved by MOHP; analysis of MHIS reforts | • Field visit to district to observe use of system | $33,840 |
| Yr. 4, Qtr. 2 | • Implement health plans and monitoring systems in 85 new districts | • Submission of DHP to MOHP, MHIS reports document system functioning | DHP approved by MOHP; analysis of MHIS reforts | • Field visit to district to observe use of system | $33,840 |

| Task Four: Monitoring system in place to track utilization and impact and provide feedback | | | | | |
|---|---|---|---|---|---|
| Yr. 1 Qtr. 4 | • Assist MOHP to establish 70 district MHIS centers | • HM/HC quarterly reports document technical assistance to MOHP in 70 districts | • Review of HM/HC quarterly reports | • Field site visit to observe district MHIS centers | $13,840 |
| Yr. 2 Qtr. 4 | • Assist MOHP to establish 75 district MHIS centers | • HM/HC quarterly reports document technical assistance to MOHP in 75 districts | • Review of HM/HC quarterly reports | • Field site visit to observe district MHIS centers | $13,840 |
| Yr. 3 Qtr. 4 | • Assist MOHP to establish 80 district MHIS centers | • HM/HC quarterly reports document technical assistance to MOHP in 80 districts | • Review of HM/HC quarterly reports | • Field site visit to observe district MHIS centers | $13,840 |
| Yr. 5 Qtr. 2 | • Assist MOHP to establish 85 district MHIS centers | • HM/HC quarterly reports document technical assistance to MOHP in 85 districts | • Review of HM/HC quarterly reports | • Field site visit to observe district MHIS centers | $13,840 |

| Task Five: Research Activities | | | | | |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 4 | · Comprehensive research plan developed | · Submission of Research Plan to MOHP and USAID | · MOHP and USAID review and approval of Research Plan | · N/A | $33,840 |
| Yr. 2, Qtr.4 | · 5 Operations research studies completed | · 5 research reports submitted to USAID and MOHP | · Statistical analysis of research results | · Validation of study results | $33,840 |
| Yr. 3, Qtr.4 | · 2003/2004 Maternal Mortality Study completed | · Maternal Mortality Study results submitted to USAID and MOHP | · Statistical analysis of MMS results | · Validation of survey results | $33,840 |
| Yr. 4, Qtr. 2 | · 12 Operations research studies completed | · 12 research reports submitted to USAID and MOHP | · Statistical analysis of research results | · Validation of study results | $33,840 |

| | | | | | |
|---|---|---|---|---|---|
| **Task Six: National Child Survival Programs Sustained** | | | | | |
| <u>Yr. 1</u>, Qtr. 4 | - EPI Coverage Rates above 90% in 30 target districts for all 7 vaccines | - EPI survey results document coverage rates | · Statistical analysis of EPI Survey | · Validation Study | $15,120 |
| **Task Seven: Better Social Community Services** | | | | | |
| <u>Yr. 1</u> Qtr. 4 | · Social Community Services implemented in 45 new districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field visit to target communities to observe service delivery | $33,840 |
| <u>Yr. 2</u> Qtr.4 | · Social Community · MHIS Services implemented in 65 new districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field visit to target communities to observe service delivery | $33,840 |
| <u>Yr. 3</u> Qtr.4 | · Social Community Services implemented in 80 new districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field visit to target communities to observe service delivery | $33,840 |
| <u>Yr. 4</u> Qtr. 2 | · Social Community Services implemented in 85 new districts | · MHIS forms record social community service delivery and utilization | · Analysis of MHIS data | · Field visit to target communities to observe service delivery | $33,840 |

| Task Eight: Small Grants Program | | | | | |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 4 | · Implement a cumulative total of 120 small grants | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $33,840 |
| Yr. 2, Qtr. 4 | · Implement a cumulative total of 140 small grants | Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $33,840 |
| Yr. 3, Qtr. 4 | · Implement a cumulative total of 160 small grants | Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | Field visits to NGOs to verify receipt of grants | $33,840 |
| Yr. 4, Qtr. 2 | · Implement a cumulative total of 170 small grants | · Grant documentation submitted to USAID | · Review of the grant proposal and supporting documentation | · Field visits to NGOs to verify receipt of grants | $33,840 |

| Task Nine: Commodity Procurement Program | | | | | |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 4 | · Procurement of 30% of Option Period Project Commodities | · Submission of invoices and receipts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodity | $33,840 |
| Yr. 2, Qtr.4 | · Procurement of 60% of Option Period Project Commodities | · Submission of invoices and receipts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodity | $33,840 |
| Yr. 3, Qtr.4 | · Procurement of 90% of Option Period Project Commodities | · Submission of invoices and receipts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodity | $33,840 |
| Yr. 4, Qtr. 2 | · Procurement of 100% of Option Period Project Commodities | · Submission of invoices and receipts to USAID | · Spot checks/audit to verify accuracy of reporting | · Spot check to verify procurement of commodity | $33,840 |

SECTION J.2.

**SAMPLE AGREEMENT BETWEEN ________ CONTRACTOR AND THE AGENCY FOR INTERNATIONAL DEVELOPMENT CONCERNING GRANTS UNDER CONTRACT**

WHEREAS, ________ (the "Contractor") and the U.S. Agency for International Development ("USAID") have entered into a contract (no. ______, the "Contract") calling for the Contractor to provide certain foreign assistance services in the area of ________ (the "Program");

WHEREAS, the Contract provides that the Contractor and USAID will agree on an arrangement under which the Contractor will award and administer certain grants on behalf of USAID;

NOW, THEREFORE, the parties agree as follows:

1. General. The Contractor will award one or more grants on behalf of USAID to eligible recipients (see Section 3 below) to further the Program, and will administer such awarded grant(s), in accordance with the requirements of USAID's Handbook 13 (see Section 4 below), the provisions of this Agreement and applicable law.

2. USAID Approval of Grantees. The Contractor shall coordinate with USAID with respect to the establishment of selection criteria for grantees, such that USAID shall have substantial involvement in the establishment of the selection criteria. Before awarding a proposed grant, the Contractor must receive the prior written approval of USAID, including USAID approval as to (1) the identity of the proposed grantee, (2) the amount of the proposed grant, and (3) the nature of the grant activities.

3. Ineligible Recipients. Without the prior written consent of the USAID contracting officer on the Contract (the "Contracting Officer"), the Contractor may not award any grant to: (1) any entity which is a "private voluntary organization" ("PVO") but has not registered as such with USAID; (2) any entity whose name appears on the "List of Parties Excluded from Federal Procurement and Non-Procurement Programs"; (3) any "public international organization"; (4) any governmental organization; (5) any entity whose country of origin/nationality is not the Cooperating Country or the United States; or (6) any entity affiliated with the Contractor or any of its directors, officers or employees. In the case of an unregistered PVO which the Contractor believes might be able to undertake useful grant activities to further the Program, the Contractor may encourage the organization to register as a PVO with USAID, provided that the Contractor makes no promise, actual or implied, that the organization shall thereafter receive a grant.

4. Handbook 13. The Contractor shall follow all requirements of USAID's handbook on grant making and administration, Handbook 13, as well as the specially modified Handbook 13 grant provisions attached as Appendices 3 and 4 hereto, except as modified by this Agreement or as approved through a specific written deviation granted by the Contracting Officer.

5. Award of Grants. Without limiting the foregoing, this Section sets forth a brief overview of the Contractor's grant-making responsibilities. Grant-

making duties include: (1) with USAID, establishing elegibility and selection criteria; (2) selecting grant recipients in accordance with competition requirements; and (3) after securing USAID's approval, drafting, negotiating and awarding grants.

Selection Criteria for the Program. The cognizant USAID technical office (the "USAID Tech Office") will provide information to the Contractor as to the desired objectives to be met by the grant activities to be supported through the Program. The USAID Tech Office may give the Contractor guidance as to the estimated number of grants to be awarded (and any limitations on the dollar amounts thereof) and as to the type of organization to be targetted for assistance (e.g., health care, farmers, etc.). USAID will have substantial involvement in the selection criteria for the grantees.

Competition for Grants. Handbook 13 calls for competition to be used to the maximum extent practicable in selecting grantees. In general, an Invitation for Applications ("IA") is to be published in appropriate publications, and applications from a minimum of two applicants must be considered. The Contracting Officer must give his or her prior approval to all IAs before publication.

The Contractor will convene a Review Panel, composed of appropriately qualified and independent personnel (which may include a USAID Tech Office representative and/or other USAID representatives) approved in advance by the Contracting Officer, to consider grant applications. Applications will be evaluated in accordance with the selection criteria set forth in the IA. Based on the work of the Review Panel, the Contractor will notify the Contracting Officer of its recommendation concerning the proposed grant award(s), including the identity of the recipient(s), the amount of the grant(s) and the nature of the proposed grantee activities. The Contractor shall not recommend for a grant any organization unless, in accordance with Handbook 13, it shall have made a positive written determination that the organization is responsible (with the necessary management, financial systems, personnel and travel policies, etc., specified in Handbook 13). Should there be questions concerning these responsibility matters, the Contractor shall consult with the Contracting Officer as appropriate, in its discretion. In all cases, USAID's prior approval is required before the Contractor may award any grant.

Handbook 13 permits the award of grants noncompetitively under certain circumstances. If the Contractor intends to make a noncompetitive award, it shall submit to the Contracting Officer for prior approval a written justification based on one of the competition exceptions set forth in Section 2B3 of Handbook 13.

Form of Grant. Each grant awarded by the Contractor on behalf of USAID under this Agreement shall be in the following form: (1) a grant letter substantially in the form of Appendix 1 hereto; (2) a Schedule substantially in the form of Appendix 2 hereto; (3) a Program Description to be developed by the grantee and the Contractor; and (4) (A) for U.S. grantees, (i) the mandatory standard provisions attached as Appendix 3A hereto, and (ii) any applicable required-as-applicable standard provisions from the list attached as Appendix 3B hereto; and (B) for non-U.S. grantees, (i) the mandatory standard provisions attached as Appendix 4A hereto, and (ii) any applicable required-as-applicable standard provisions from the list attached as Appendix 4B hereto.

6. Term of Grants. The Contractor may not award any grant for a period

extending beyond the estimated termination or completion date of its Contract.

7. Amount of Grants. The total estimated value of the grant program under the Contract is $_______. The Contractor will not execute grants aggregating more than this amount.

8. Funding of Grants; Separate Account. The Contractor will give periodic advances to the recipients of all grants hereunder, in accordance with the Required-as-Applicable Standard Provision (no. 3 of Appendix 3B or no. 1 of Appendix 4B), unless USAID shall have agreed to another payment mechanism. The Contractor will receive reimbursement from USAID of such advanced amounts through its usual vouchering procedure under the Contract. All interest and other refunds by grant recipients hereunder will be made to a special, non-commingled, interest-bearing account established by the Contractor (the "Separate Account"). The Contractor has no beneficial interest in any funds in the Separate Account. Funds in the Separate Account may be used for grant-making or shall be apid annually to USAID, as directed by the Contracting Officer. At the conclusion of the Contract, any funds remaining in the Separate Account shall be returned to USAID.

9. Right of USAID to Supersede Contractor Decisions. Recognizing the paramount interest of the United States and USAID in grant-making, the parties agree that USAID may, in its sole discretion, supersede any decision, act or omission taken by the Contractor in respect of any grant made by it, or proposed to be made by it, hereunder. Notwithstanding any other provision of this Agreement, USAID retains the right, at all times hereunder, through the Contracting Officer, to (1) dictate a different decision with respect to the award or administration of any grant; (2) rectify an omission by the Contractor with respect to the award or administration of any grant; (3) take over the administration of any grant awarded hereunder; and/or (4) terminate, in whole or in part, the Contractor's authorities under this Agreement.

10. Amendment of Grants. The Contractor has the authority to make, without the prior approval of the Contracting Officer, written amendments to awarded grants, provided that the amendments (1) are of a minor or administrative nature, (2) do not change the obligated amount or the purposes of any grant, (3) are satisfactory to the grantee, and (4) are promptly transmitted to the Contracting Officer. The Contracting Officer must give his or her prior approval to all other amendments.

11. Conflicts. In performing its duties hereunder, the Contractor shall scrupulously avoid any conflicts of interest. Should any conflict of interest arise, the Contractor shall immediately notify the Contracting Officer as to the conflict and the Contractor's proposed solution for avoiding the conflict, and the Contractor shall follow the instructions of the Contracting Officer.

12. Records Retention. The Contractor will act as custodian for USAID of all records relating to grants under the Contract. The Contractor will preserve all records with respect to its grant-making (including with respect to the deliberations of all Review Panels) and grant administration hereunder. Copies of all reports received from grantees will be promptly forwarded to the Contracting Officer or his/her designee. USAID and the Comptroller General shall have full access to all documents, papers and others records of the Contractor with respect to its duties hereunder. At the conclusion of the Contract, the Contractor shall consult with the Contracting Officer for direction as to which records shall be transferred to USAID.

13. Liability. The Contractor shall have no liability to USAID with respect

to its awarding and administration of grants on behalf of USAID hereunder, or with respect to the acts or omissions of its grantees hereunder, except to the extent that losses to the USAID foreign assistance program arise from the Contractor's negligence or bad faith in performing its responsibilities hereunder.

USAID

UNITED STATES AGENCY for INTERNATIONAL DEVELOPMENT

CAIRO, EGYPT

June 11, 2001

JOHN SNOW, INC. (JSI)
Healthy Mother/Healthy Child Results Package
21 Misr Helwan Agricultural Road, 10th Floor
P.O. Box 11728-611, Maadi
Cairo, Egypt

ATTN.: Reginald F. Gipson, MD
Chief of Party

SUBJECT: Requested Subcontract Consent Under
Contract No. 263-C-00-98-00041-00

REF: JSI Letter Dated May 20, 2001
USAID/Egypt (O/PROC) Letter Dated May 22, 2001
USAID/Egypt meeting with JSI on May 23, 01

Dear Dr. Gipson:

Based on your submission dated May 20, 2001, Contracting Officer consent is hereby granted to issue the following subcontracts/grants under the subject contract as described below:

1. The Fixed Price Subcontract between JSI and Promoseven Egypt to work with JSI on Task Eight to produce and air IEC materials for a national campaign related to "Care of the Mother and Baby".

2. The three Fixed Price Subcontracts resulting from IFB #8, between JSI and the following suppliers to provide medical commodities:

   1) Arj-Med, Inc.
   2) International Construction Services (ICS)
   3) First Gulf International, Inc.

3. The Fixed Price Subcontract resulting from IFB #9, between JSI and International Construction Services, Systems Integration Division (ICS) for the commodity procurement of portable incubators.

4. The following Small Grants – Beni Suef NGOs:

   1) Massaret Abu-Seer El Mala CDA
   2) Beni-Soliman El Sharqia CDA
   3) Beni-Soliman El Sharqia Environmental Protection and Community Development Assoc.
   4) Coptic Organization for Services and Training
   5) Family Care and Development Association

USAID Building
Laselki street, New Maadi
Cairo, Egypt
Postal Code 11435

6) Beba Island CDA
7) Scientific Foundation for Environment and Community Development, Beba
8) Menshat Nasser CDA

5. Subcontract Amendment between JSI and Geologistics Services, Inc. – IQC subcontract to provide freight forwarding of Healthy Mother/Healthy Child commodities.

Contracting Officer consent to the subject subcontracts/small grants does not constitute acceptability of the terms and conditions, nor the consent of the USAID cognizant technical officer, nor the allowability of any subcontract price/grant amount or of any amount paid under the subcontract/small grant.

The consent also does not constitute approval for JSI to incur costs which exceed the total estimated cost of the contract or the total obligated amount, whichever is less, and does not relieve the contractor of any responsibility for performing its contract.

In addition to the above granted consent, please note that your referenced letter of May 20, 2001 requested the Contracting Officer approval on items marked priority "6" "Approval for Changes in Review panel" and priority "8" "Emergency Travel Approval for Mr. Sunil Mehra". In order to streamline the approval process, JSI is requested to cite where in the contract Contracting Officer approval is required and provide the requisite justification, if necessary.

Finally, please provide documentation from John Snow, Inc. headquarters delegating to you the authority to request approvals and conduct contractual-related matters with USAID/Egypt. Normally these types of transactions are conducted through an organization's headquarters and not the Chief-of-Party.

If you have any questions or need to clarify any issues presented above, I will be happy to meet with you.

Sincerely,

Cynthia Judge
Contracting Officer

USAID

UNITED STATES AGENCY for INTERNATIONAL DEVELOPMENT

CAIRO, EGYPT

Office of Procurement

November 29, 2001

Reginald F. Gipson, MD
Chief of Party
JOHN SNOW, INC. (JSI)
21 Misr Helwan Agricultural Road, 10th Floor
P.O. Box 11728-611, Maadi
Cairo, Egypt

SUBJECT: Contracting Officer Consent to Subcontract Award & Subcontract Modification Healthy Mother/Healthy Child Results Package, 263-0242, Contract No. 263-C-00-98-00041-00

REF:
(1) USAID Letter to JSI dated June 11, 2001
(2) JSI E-mail Dated October 10, 2001 – ArabSoft Subcontract
(3) USAID Nationality Waiver dated November 4, 2001
(4) JSI Letter dated November 26, 2001 – Amendment to Fixed Price Subcontract #205 to ICS for Medical Commodities (IFB # 8)
(5) JSI Letter dated November 21, received at USAID on 11/29/2001 – Small Grant Program – Review Panel

Dear Mr. Gipson:

Based on your referenced submissions and the USAID approved Nationality waiver for Arabsoft, dated November 4, 2001, Contracting Officer consent is hereby granted as described below:

1. **Amendment to the JSI – Arabic Software Engineering, Inc. (Arabsoft), subcontract No. 5113-S-004,** exercising the option period and increasing the total subcontract amount by $389,000 from $247,500 to $636,500 (base and option.

2. **Amendment to the JSI subcontract with the U.S. supplier, ICS, Systems Integration Division (ICS), (IFB # 8)** increasing the quantity of incubators required for line items #20 and 21 (Incubator Intensive Care and Incubators Normal Care) through exercising of the IFB option clause, therefore increasing the value of the contract by $165,605.80 for a new total fixed price amount of $816,731.94

USAID Building
Laselki street, New Maadi
Cairo, Egypt.
Postal Code 11435

3. The revised composition of the Small Grant Program – Review Panel as follows:
   1) Mr. Sobhi Moharam, JSI
   2) Mr. Mohamed Mansour, JSI
   3) Dr. Hany Riad, JSI
   4) Mr. Sayed Keshta, JSI
   5) Mrs. Katrina Kruhm, JSI
   6) TBD/JSI (to be determined based on technical input needed in relation of the subject of the project proposal)
   7) Dr. Emad Yanni, USAID/Cairo

Contracting Officer consent to the above subcontracts/subcontract modifications does not constitute acceptability of the terms and conditions, nor the consent of the USAID Cognizant Technical Officer, nor the allowability of any subcontract/subcontract modification amount or of any amount paid under the above subcontracts/subcontract modification.

The consent also does not constitute approval for (the Contractor) to incur costs, which exceed the total estimated cost of the contract or the total obligated amount, whichever is less, and does not relieve the contractor of any responsibility for performing its contract, nor modify any other terms and conditions of the contract.

If you have any questions or need to clarify any issues presented above, I will be happy to meet with you.

Sincerely,

Cynthia Judge
Contracting Officer

CC: Dr. Nahed Matta, CTO
Dr. Emad Yanni, HDD/PH

TOTAL P.03

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE 1 OF 7 PAGES

2. AMENDMENT/MODIFICATION NO. 04

3. EFFECTIVE DATE: See block 16c

4. REQUISITION/PURCHASE REQ. NO. 263-0242-3-94132, A.4

5. PROJECT NO. (If applicable) 263-0242

6. ISSUED BY CODE
Office of Procurement
USAID/Egypt
Unit 64902
APO AE 09839-4902

7. ADMINISTERED BY (If other than Item 6) CODE
USAID/Egypt, HDD/PHN

COPY

Accounting

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP code)
John Snow, Inc.
44 Farnsworth street
Boston, MA 02210-1211

TIN: 04257850
DUNS: 09-150-0090

CODE | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

x 10A. MODIFICATION OF CONTRACT/ORDER NO. 263-C-00-98-00041-00

10B. DATED (SEE ITEM 13) March 15, 1998

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offerors must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See pages 6 of this modification

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| x | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. FAR 52-243-2 CHANGES - COST REIMBURSEMENT |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| x | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: The FAA of 1961, as amended, E.O. 11223, FAR and AIDAR |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 2 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to:
1. Extend the dates of several milestones.
2. Approve key personnel changes.
3. Realign and increase the budget pursuant to FAR 52.243-2 Changes-Cost Reimbursement.
4. Increase the Total Estimated and the obligated amounts of the contract by $4,608,314.
5. Correct inconsistencies in JSI's original contract.
6. Modify and/or extend JSI's tasks no. one, five, six, nine and eleven.
7. Modify the milestone plan to reflect changes in section C.
8. Change the CTO.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Joel H. Lamstein President

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Gary V. Kinney

15B. CONTRACTOR/OFFEROR
[signature]
(Signature of person authorized to sign)

15C. DATE SIGNED
Sept 27 200?

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED
9 Oct 00

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

1. Cover Page, block 15, delete in its entirety and substitute the following in lieu thereof.

| Item No (A) | Supplies/Services (B) | Quantity (C) | Unit (D) | Unit Price (E) | Amount (F) |
|---|---|---|---|---|---|
| 1 | Task One | 1 | EA | $2,749,177 | $2,749,177 |
| 2 | Task Two | 1 | EA | $2,920,520 | $2,920,520 |
| 3 | Task Three | 1 | EA | $681,556 | $681,556 |
| 4 | Task Four | 1 | EA | $848,172 | $848,172 |
| 5 | Task Five | 1 | EA | $1,899,282 | $1,899,282 |
| 6 | Task Six | 1 | EA | $1,770,901 | $1,770,901 |
| 7 | Task Seven | 1 | EA | $1,493,267 | $1,493,267 |
| 8 | Task Eight | 1 | EA | $2,658,563 | $2,658,563 |
| 9 | Task Nine | 1 | EA | $1,523,999 | $1,523,999 |
| 10 | Task Ten | 1 | EA | $1,285,851 | $1,285,851 |
| 11 | Task Eleven | 1 | EA | $10,195,908 | $10,195,908 |
| | | | | Total Amount of contract (g) | $28,027,196 |

2. SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS

a. B.3. entitled ESTIMATED COST, FIXED FEE, AND OBLIGATED AMOUNT, Paragraph B., delete in its entirety and substitute the following in lieu thereof"

"a. The estimated cost for the performance of the work required hereunder, exclusive of fixed fee, if any is $26,438,348, for the base period and $18,804,672 for the option period. The fixed fee is $1,586,848 for the base period and $1,128,000 for the option period. The estimated cost plus fixed fee for the base period is $28,027,196 and the total estimated cost plus fixed fee for the option period is $19,932,672."

b. B.3.b., delete "$23,418,882" and substitute "$28,027,196" in lieu thereof.

c. B.3.e. Delete in its entirety and substitute the following in lieu thereof:

(e) The contractor shall submit, for technical review, all information and appropriate documentation necessary to demonstrate and support the achievement of milestones to the Contracting Officer's Technical Representative (COTR), with a copy to the Contracting Officer. The Contractor shall also provide an explanation and/or justification if any milestones have not been achieved according to the schedule. The COTR will lead a review of the documentation to determine if the milestones have been met and will either approve or disapprove the payment of the fee."

d. B.4. entitled LINE ITEMS, delete in its entirety and substitute the following in lieu thereof.

**Base Period**

| | Total Cost | Fee | Total Estimated Cost plus Fixed Fee |
|---|---|---|---|
| Task One | 2,589,817 | 159,360 | $2,749,177 |
| Task Two | 2,774,440 | 146,080 | $2,920,520 |
| Task Three | 575,316 | 106,240 | $681,556 |
| Task Four | 741,932 | 106,240 | $848,172 |
| Task Five | 1,819,602 | 79,680 | $1,899,282 |
| Task Six | 1,651,381 | 119,520 | $1,770,901 |
| Task Seven | 1,360,467 | 132,800 | $1,493,267 |
| Task Eight | 2,512,483 | 146,080 | $2,658,563 |
| Task Nine | 1,438,546 | 85,453 | $1,523,999 |
| Task Ten | 1,126,491 | 159,360 | $1,285,851 |
| Task Eleven | 9,847,873 | 348,035 | $10,195,908 |
| Total | 26,438,348 | 1,588,848 | $28,027,196 |

**Option Period**

| | Total Cost | Fee | Total Estimated Cost plus Fixed Fee |
|---|---|---|---|
| Task One | 2,507,944 | 150,000 | 2,657,944 |
| Task Two | 2,718,212 | 163,000 | 2,881,212 |
| Task Three | 906,848 | 54,000 | 960,848 |
| Task Four | 711,982 | 43,000 | 754,983 |
| Task Five | 1,745,562 | 105,000 | 1,850,562 |
| Task Six | 2,033,244 | 122,000 | 2,155,244 |
| Task Seven | 1,842,374 | 111,000 | 1,953,374 |
| Task Eight | 6,338,506 | 380,000 | 6,718,506 |
| Total | 18,804,672 | 1,128,000 | 19,932,672 |

3. SECTION C - DESCRIPTIONS/SPECIFICATIONS/WORK STATEMENT

a. C.4.2.1.iv., Task One, add the following:

"Activity 4: The contractor shall provide technical assistance in the form of architectural and engineering services (developing plans and bills of quantities and monitoring activities of the MOHP A&E contractors) to expedite the renovation of MOHP district health facilities (five governorates) and health information centers in eight Upper Egypt governorates.

Activity 5: The contractor shall provide technical assistance to ensure that the essential obstetric and neonatal protocols and standards are being implemented in the field by providing on-the-job training."

b. C.4.2.1.v., Task One, under "Monitoring Plan & Completion Indicator", add the following to the Performance Target

"- Architectural and Engineering technical assistance provided for the 100 anchor facilities that require renovation by MOHP.
- Performance Evaluation instrument utilized for trained physicians on Essential Obstetric Care (EOC) services."

c. C.4.2.2, Task Two, under "Monitoring Plan & Completion Indicator", 6th bullet, delete "month 48" and substitute "Month 42" in lieu thereof.

d. C.5.2.1, Task Three, section III entitled, Strategies and Rationale for Reach Outcomes, second paragraph, delete "four target governorates" and substitute "five target governorates" in lieu thereof.

e. C.5.2.3.iv. Task Five, under Activity 2, add the following: "Add a perinatal/neonatal component to the 2000/2001 Perinatal neonatal maternity Mortality Study (PNMMS).

f. C.5.2.3.iv. Task Five, add the following:

"Activity 5: Additional technical assistance to strengthen the newly established maternal mortality surveillance system in the Upper Egypt governorates."

g. C.5.2.3, Task Five, delete all references to "1999/2000" and substitute "2000/2001" in lieu thereof.

h. C.5.2.3, Task Five, under "Performance Targets", add the following:

"- Add a perinatal/neonatal component to the 2000/2001 National Maternal Mortality Study to become the Perinatal/Neonatal Maternal Mortality Study (PNMS).
- Perinatal/Neonatal mortality component of the NMMS completed and report written.
- A maternal mortality surveillance system developed and functioning in the Upper Egypt governorates."

i. C.6.2.1.iv., Task Six, delete "Under HM/HC, the Contractor Team will expand the Daya Training Program to 60 districts not covered by the CSP" and insert "The Contractor will assist in finalizing a refresher training curricula for Dayas and in conducting these courses in 25 target districts of Upper Egypt" in lieu thereof.

j. C.6.2.1.iv, Task Six, add the following to Activity 3.

"- Additional technical assistance to implement an expanded package of activities to improve the national and target perinatal care program
- Development of national clinical protocols and service standards for Level I-IV neonatal care-centers
- Assist the MOHP in the newly established neonatal screening program for congenital anomalies."

k. C.6.2.1.v., Task Six, add the following to Performance Targets

"- Level of care improved in neonatal Centers in HMHC target Governorates
- Summary reports submitted to USAID detailing the improvement of the neonatal centers in groups of 25."

l. C.7.2.2, delete all references to "SIS" and substitute with "MOHP and other partners" in lieu thereof.

m. C.7.2.2.iv. entitled Activities: Delete Activity one in its entirety.

n. C.7.2.2.v. Task Seven, Monitoring Plan and Completion Indicators, delete "Achievement of the following performance indicators will be regularly monitored during the first four years of the project" and replace with " Achievement of the following performance indicators will be regularly monitored during the first three and half years of the project"

o. C.7.2.3.vi. Task Nine, Activity 1, add the following:

"- Increase the level of effort to ensure sustainable implementation of the school-based intervention for adolescents
- Expand the scope of work to include boys as well as girls
- Strengthen nutrition health messages and explore adding anti-smoking messages in the education curricula."

p. C.7.2.3.v., Task Nine, under Performance Targets, add the following:

"- The inclusion of pilot-tested antismoking messages in an education curricula."

q. C.8.1, Task Ten, delete 3rd paragraph and substitute the following in lieu thereof:

"The total funds for small to medium size grants ($500 to $20,000) available will be up to $1,000,000 (one million) for activities. The conditions governing the small grant program are contained in Section H."

r. C.8.1.v., Task Ten, Small Grants Program, delete "Performance Targets" in its entirety and insert the following in lieu thereof:

Award Approximately 100 small grants to NGOs not to exceed $1,000,000 in the target districts.

| By | Cumulative Total |
|---|---|
| June 15, 2000 | 20 small grants |
| November 15, 2000 | 50 small grants |
| March 15, 2001 | 90 small grants |
| September 15, 2001 | 100 small grants" |

s. C.8.2., and C.8.2.iii, Task Eleven, delete "The Contractor will submit semi-annual reports on progress to the USAID COTR and semi-annual procurement plans to the Contracting Officer for approval" and insert "The Contractor shall submit annual reports on progress as part of the milestone documentation for procurement to the USAID COTR. The Contractor shall also submit annual procurement plans to the COTR and Contracting Officer for approval." in lieu thereof.

t. C.8.2. Task Eleven, delete "$6,000,000" and substitute "$9,362,000" in lieu thereof.

u. C.8.2.iv, Task Eleven, add the following:

"Activity 2: Supplemental physical improvements to various MOHP district health facilities and Health Information Centers in the HM.HC target governorates of Upper Egypt governorates maybe funded under the commodity Procurement Budget in a total amount not to exceed $300,000. This is for minor renovations vital to the finalization of the facilities that can not be covered by the MOHP Contractor in a timely manner."

v. C.10.6, Task six for the Option Period, entitled Established National Child Survival Programs Sustained is deleted in its entirety.

w. C.10.7, Task Seven for the Option Period, entitled Better Social Community Services is renumbered as C.10.6, Task Six.

x. C.10.8, Task Eight for the Option Period, entitled Small Grant Program is renumbered as C.10.7, Task Seven.

y. C.10.9 Task Nine for the Option Period, entitled Commodity Procurement Program is renumbered as C.10.8 Task Eight.

4. SECTION F - DELIVERIES OR PERFORMANCE

F.6., Key personnel, delete "IEC specialist: Tawhida Hamed Khalil" and insert "Coordinator of Community Health Development : Sunil Mehra" in lieu thereof.

5. SECTION G - CONTRACT ADMINISTRATION DATA

a. G.3. Contracting Officer's Technical Representative, delete "Francisco Zamora" as the CTO and substitute "Nahed Matta" in lieu thereof.

b. G.6, Accounting and Appropriation Data, add the following:

"Modification No. 4:

| | |
|---|---|
| MAARD No.: | 263-0242-3 94132, A.4 |
| Appropriation Symbol: | 72X1037 |
| Budget Plan Code: | HES4-95-23263-IG13 |
| Amount Obligated: | $448,517.65 |
| | |
| MAARD No.: | 263-0242-3-94132, A.4 |
| Appropriation Symbol: | 72X1037 |
| Budget Plan Code: | HES6-96-23263-IG13 |
| Amount Obligated: | $9,040.00 |

| | |
|---|---|
| MAARD No.: | 263-0242-3-94132, A.4 |
| Appropriation Symbol: | 729/01037 |
| Budget Plan Code: | HES9-99-23263-IG13 |
| Amount Obligated: | $103,792.48 |
| MAARD No.: | 263-0242-3-94132, A.4 |
| Appropriation Symbol: | 720/11037 |
| Budget Plan Code: | HES0-00-23263-IG13 |
| Amount Obligated: | $1,142,521.52 |
| MAARD No.: | 263-0242-3-94132, A.4 |
| Appropriation Symbol: | 729/01037 |
| Budget Plan Code: | HES0-00-23263-IG13 |
| Amount Obligated: | $3,094,378.11 |
| MAARD No.: | 263-0242-3-94132, A.4 |
| Appropriation Symbol: | 720/11037 |
| Budget Plan Code: | HES9-99-23263-IG13 |
| Amount Obligated: | $267,621.89" |

6. SECTION I - CONTRACT CLAUSES

Delete "FAR 52.244-2 SUBCONTRACTS (COST REIMBURSEMENT AND LETTER CONTRACTS)(OCT 1997)" and insert "FAR 52.244-2 SUBCONTRACTS (COST REIMBURSEMENT AND LETTER CONTRACTS)(AUG 1998)" in lieu thereof.

7. SECTION J - ATTACHMENTS

a. Delete Attachment no. 1 entitled Performance Milestone Plan and substitute with attachment no. J.1 entitled Modified Performance Milestone Plan.

b. Add Attachment no 2 entitled Agreement between JSI and USAID concerning Grants under Contracts.

**Attachment No. J.1.**
**Page 1 of 5**
**MODIFIED PERFORMANCE MILESTONE PLAN**
**Base Period – 3/15/98 - 9/15/01**

**Result 5.1.1. Quality of Essential Maternal, Perinatal and Child Health Services Improved**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 2, (9/15/98) | 1 HM/HC Package Consensus Meeting held and package finalized. (Task One) | Submission of Consensus Meeting Report to MHP and USAID | MOHP and USAID approval of Consensus Meeting Report | Consensus Meeting Attendance. | $39,840 |
| Qtr. 4, (3/15/99) | Lead Trainers trained for 5 districts and package implemented in 5 districts. (Task Two) | Training Report submitted to MOHP/USAID; MHIS forms record service del. And util. Data. | Analysis of MHIS data and comparison with Project target. | Field visits to verify Trainings and delivery of basic package | $26,560 |
| Yr. 2, Qtr 2, (7/15/00) | HM/HC curricula taught in 2 medical and 2 nursing schools. (Task Two) | Submission of a report detailing the steps taken by JSI and the medical/nursing schools to implement the HM/HC curricula. | USAID approval of report. | Validation of report | $26,560 |
| Qtr. 4, (11/15/00) | Implementation of basic package in 10 districts (Task One) | Report detailing implementation of basic package in each district including service delivery and utilization data. | USAID approval of report. | Field visits to verify delivery of basic package | $39,840 |
| Yr. 3, Qtr. 2, (10/15/00) | HM/HC curricula taught in 6 medical and 6 nursing schools (Task Two) | Submission of a report detailing the steps taken by JSI and the medical/nursing schools to implement the HM/HC curricula. | USAID approval of report. | Validation of report | $26,560 |
| Qtr. 4, (3/15/01) | Implementation of basic package in 20 districts (Task One) | Report detailing implementation of basic package in each district including service delivery and utilization data. | USAID approval of report. | Field visit to verify delivery of basic package. | $39,840 |
| Qtr. 4, (3/15/01) | HM/HC curricula taught in 10 medical and 10 nursing schools (Task Two) | Submission of a report detailing the steps taken by JSI and the medical/nursing schools to implement the HM/HC curricula. | USAID approval of report. | Validation of report | $39,840 |
| Yr. 4, Qtr. 2, (9/15/01) | HM/HC curricula taught in 13 medical and 13 nursing schools (Task Two) | Submission of a report detailing the steps taken by JSI and the medical/nursing schools to implement the HM/HC curricula | USAID approval of report. | Validation of report | $26,560 |
| Qtr. 2, (9/15/01) | Implementation of basic package in 25 districts (Task One) | Report detailing implementation of basic package in each district including service delivery and utilization data. | USAID approval of report. | Field visits to verify delivery of basic package. | $39,840 |

**Attachment No. J.1.**
**Page 2 of 5**
**MODIFIED PERFORMANCE MILESTONE PLAN**
**Base Period -- 3/15/98 - 9/15/01**

**Result 5.1.2. Districts Implementing Essential M, P & C Services in Target Governorates**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 1, (6/15/98) | Commencement of MHIS Assessment (Task Four) | Submission of MHIS Assessment Tool to MOHP and USAID. | MOHP and USAID approval of Assessment | Site visit to observe or verify MHIS assessment. | $26,560 |
| Qtr. 3, (12/15/98) | Completion of HM/HC management guidelines for district planning. (Task Three) | Submission of HM/HC Guidelines to MOHP/USAID. | MOHP and USAID approval of HM/HC Guidelines | N/A | $39,840 |
| Yr. 2, Qtr. 1, (6/15/99) | Assist MOHP to establish 10 district MHIS centers. (Task Four) | HM/HC quarterly reports document technical assistance to MOHP in 10 districts. | Review of HM/HC quarterly reports | Field visits to observe district MHIS centers | $26,560 |
| Qtr. 3, (12/15/99) | 8 District health plans and monitoring systems developed and implemented (Task Three) | Submission of D.H.P. to MOHP; MHIS reports document system functioning | DHP approved by MOHP;. analysis of MHIS reports | Field visit to district to observe use of system | $39,840 |
| Yr. 3, Qtr. 1, (6/15/00) | Assist MOHP to establish 30 district MHIS centers. (Task Four) | HM/HC quarterly reports documents technical assistance to MOHP in 30 districts. | Review of HM/HC quarterly reports | Field visits to observe district MHIS centers | $26,560 |
| Qtr. 3, (12/15/00) | 20 District health plans and monitoring systems developed and implemented (Task Three) | Submission of D.H.P. to MOHP; MHIS reports document system functioning. | DHP approved by MOHP; analysis of MHIS reports | Field visit to district to observe use of system | **$13,280** |
| Yr. 4, Qtr. 1, (6/15/01) | Assist MOHP to establish 65 district MHIS centers. (Task Four) | HM/HC quarterly reports documents technical assistance to MOHP in 65 districts. | Review of HM/HC quarterly reports | Field visits to observe district MHIS centers | $26,560 |
| Qtr. 2, (9/15/01) | 25 District health plans and monitoring systems developed and implemented. (Task Three) | Submission of D.H.P. to MOHP; MHIS reports document system functioning. | DHP approved by MOHP; analysis of MHIS reports | Field visit to district to observe use of system | **$13,280** |

**MODIFIED PERFORMANCE MILESTONE PLAN**
**Base Period – 3/15/98 - 9/15/01**

**Result 5.1.3. Established National Child Survival Program Sustained**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 2, (9/15/98) | Assessment of neonatal centers conducted. (Task Six) | Submission of Neonatal Center Assessment Report to MOHP and USAID. | MOHP and USAID approval of Neonatal Center Assessment Report. | Field visits to neonatal centers to verify assessment results. | $26,560 |
| Qtr. 4, (3/15/99) | Completion of Egypt-specific Integrated Sick Child Management Plan. (Task Six) | Plan submitted to MOHP and USAID. | MOHP and USAID approval of Sick Child Management Plan. | N/A | $39,840 |
| Yr. 2, Qtr. 2, (9/15/99) | Daya training program modified and ready for implementation. (Task Six) | Submission of revised Daya Training Program to MOHP and USAID. | MOHP and USAID approval of revised Daya Training Program. | Field visit to Daya training site to verify appropriateness of training. | $26,560 |
| Qtr. 4, (3/15/00) | 3 operations research studies completed. (Task Five) | 3 Research Reports submitted to MOHP and USAID. | Statistical analysis of research results. | Validation of study. | $39,840 |
| Yr. 3, Qtr. 2, (6/15/01) | 2000/2001 Maternal Mortality Survey completed with perinatal/neonatal component. (Task Five) | MMS results submitted to MOHP and USAID. | Statistical analysis of survey results. | Validation of study | $39,840 |
| Qtr. 4, (12/15/00) | Neonatal services at centers are linked with comprehensive perinatal programs in 25 target districts. (Task Six) | Report showing evidence of activities and linkages. | USAID approval of report. | Validation of report. | $13,280 |
| Yr. 4, Qtr. 1, (7/15/01) | Services improved in 100 MOHP neonatal centers. (Task Six) | Report detailing action taken to improve the service standards in the selected 100 neonatal centers. | Analysis of Pre and Post assessment scores for the neonatal centers in the eight Upper Egypt target governorates. | Validation of report. | $13,280 |

**Attachment No. J.1.**
**Page 4 of 5**
**MODIFIED PERFORMANCE MILESTONE PLAN**
**Base Period -- 3/15/98 - 9/15/01**

**Result 5.1.4. Increased Knowledge and Improved Behavior in Households**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 1, (6/15/98) | Rapid Assessment of existing print and mass media conducted. (Task Eight) | Assessment report submitted to MOHP and USAID. | MOHP and USAID approval of Assessment Report. | N/A | $26,560 |
| Qtr. 3, (12/15/98) | Field test of protocols for linking communication groups with providers completed. (Task Seven) | Protocol completed | MOHP and USAID approval of protocol. | Field visit to verify use of protocol | $26,560 |
| Yr. 2, Qtr. 1, (6/15/99) | National IEC Strategy to support HM/HC developed. (Task Eight) | Strategy document and budget completed and submitted to MOHP and USAID. | Strategy and budget approved by USAID and MOHP. | N/A | $39,840 |
| Qtr. 3, (12/15/99) | Needs identification tool implemented in 5 communities. (Task Seven) | Implementation Report completed and submitted. | MOHP and USAID approve Implementation Report. | Field visit to observe needs identification process. | $26,560 |
| Yr. 3, Qtr. 1, (6/15/00) | National IEC campaign developed. (Task Eight) | Media reports documenting # of broadcasts, materials printed, community activities conducted. | Review and analysis of media report. | Spot checks to verify media broadcast and availability of materials. | $39,840 |
| Qtr. 2, (9/15/00) | Health Educator Guide and education materials for use in schools developed (Task Nine) | Health Educator Guide and education materials submitted to USAID | USAID approval of materials | N/A | $39,840 |
| Qtr. 2, (10/15/00) | SMIP nutrition education and anemia supplementation program implemented in one governorate (Task Nine) | Submission of a report documenting no. of schools and students reached | USAID assessment of report | USAID approval of report | $22,806 |
| Qtr. 3, (12/15/00) | Community Action Plans developed and implemented in 20 districts. (Task Seven) | Report which includes details of the implementation of each Community Action Plan. | USAID approval of report | Field site visit to target communities. | $39,840 |
| Yr. 4, Qtr. 1, (6/15/01) | FGM component integrated into overall HM/HC message package. (Task Eight) | FGM Media Report submitted to USAID and MOHP. | Review and analysis of FGM report. | Spot checks to verify inclusion of FGM messages. | $39,840 |
| Qtr. 2, (9/15/01) | Community Action Plans developed and implemented in 25 districts (Task Seven) | Report which includes details of the implementation of each Community Action Plan | USAID approval of report | Field visits to target communities. | $39,840 |
| Qtr. 2, (9/15/01) | SMIP nutrition education and anemia supplementation program plans being implemented five target governorates and national SMIP plan developed (Task Nine) | Submission of a report documenting no. of schools and students reached | USAID assessment of report | USAID approval of report | $22,807 |

Attachment No. J.1.
Page 5 of 5
MODIFIED PERFORMANCE MILESTONE PLAN
Base Period -- 3/16/98 - 9/15/01

**Supporting Activities -- Small Grants Program and Commodity Procurement Program**

| Time | Milestone | Data Collection | Evaluation | Validation | Fee |
|---|---|---|---|---|---|
| Yr. 1, Qtr. 2, (9/15/98) | Development of HM/HC Project Procurement Plan. (Task Eleven) | Submission of Procurement Plan to USAID. | Review and approval of Procurement Plan. | N/A | $26,560 |
| Qtr. 4, (6/15/00) | 20 small grants awarded to NGOs in target districts. (Task Ten) | Grant documentation submitted to USAID. | Review of the grant proposal and supporting documentation. | Field visit to NGOs to verify receipt of grants. | $39,840 |
| Yr. 2, Qtr. 2, (9/15/99) | Procurement of $900,000 of Project commodities. (Task Eleven) | Submission of invoices and receipts to USAID. | Spot checks/audit to verify accuracy of reporting. | Spot check to verify procurement of commodities. | $26,560 |
| Qtr. 4, (11/15/00) | Development of HM/HC Procurement Plan for the additional $ 3,362,000 in commodities. (Task Eleven) | Submission of Procurement Plan to USAID. | USAID review of Procurement Plan. | N/A | $71,745 |
| Qtr. 4, (11/15/00) | 50 small grants awarded to NGOs in target districts. (Task Ten) | Grant documentation submitted to USAID. | Review of the grant proposal and supporting documentation. | Field visit to NGOs to verify receipt of grants. | $39,840 |
| Yr. 3, Qtr. 2, (9/15/00) | Procurement of $3 Million of Project commodities. (Task Eleven) | Submission of a report detailing commodities procured and distribution. | Spot checks/audit to verify accuracy of reporting. | Spot check to verify procurement of commodities. | $26,560 |
| Qtr. 3, (12/15/00) | Procurement of $4.5 Million of Project commodities (Task Eleven) | Submission of a report detailing commodities procured and distribution. | Spot checks/audit to verify accuracy of reporting. | Spot check to verify procurement of commodities. | $26,560 |
| Qtr. 4, (3/15/01) | 90 small grants awarded to NGOs in target districts. (Task Ten) | Grant documentation submitted to USAID. | Review of the grant proposal and supporting documentation. | Field visit to NGOs to verify receipt of grants. | $39,840 |
| Qtr. 4, (3/15/01) | Procurement of $ 6,181,000 of Project Commodities. (Task Eleven) | Submission of a report detailing commodities procured and distribution. | Spot checks/audit to verify accuracy of reporting. | Spot check to verify procurement of commodities | $71,745 |
| Yr. 4, Qtr. 2, (9/15/01) | Procurement of $9,362,000 of Project commodities. (Task Eleven) | Submission of a report detailing commodities procured and distribution. | Spot checks/audit to verify accuracy of reporting. | Spot check to verify procurement of commodities. | $98,305 |
| Qtr. 2, (9/15/01) | 100 small grants awarded to NGOs in 25 target districts. (Task Ten) | Grant documentation submitted to USAID. | Review of the grant proposal and supporting documentation. | Field visit to NGOs to verify receipt of grants. | $39,840 |

**AGREEMENT BETWEEN JOHN SNOW, INC.**
**AND THE AGENCY FOR INTERNATIONAL DEVELOPMENT**
**CONCERNING GRANTS UNDER CONTRACT NO. 263-C-00-98-00041-00**

WHEREAS, John Snow, Inc. (the "Contractor") and the U.S. Agency for International Development ("USAID") have entered into a contract (No. 263-C-00-98-00041-00, the "Contract") calling for the Contractor to provide certain foreign assistance services in the area of Sustainable Improvements in the Health of Women and Children (the "Program");

WHEREAS, the Contract provides that the Contractor and USAID will agree on an arrangement under which the Contractor will award and administer certain grants on behalf of USAID;

NOW, THEREFORE, the parties agree as follows:

1. General. The Contractor will award grants, which are anticipated to range from $500 to $25,000, on behalf of USAID to eligible recipients (see Section 3 below) to further the Program, and will administer such awarded grant(s), in accordance with the requirements of USAID's Automated Directives System 303 (see Section 4 below), the provisions of this Agreement and applicable law, as required by Section C.8.1 of the Contract (and if the contract option is exercised, Section C.10.8 of the Contract).

2. USAID Approval of Grantees. The Contractor shall coordinate with USAID with respect to the establishment of selection criteria for grantees, such that USAID shall have substantial involvement in the establishment of the selection criteria. Before awarding a proposed grant, the Contractor must receive the prior written approval of the USAID Contracting Officer on the Contract (the "Contracting Officer") as to (1) the identity of the proposed grantee, (2) the amount of the proposed grant, and (3) the nature of the grant activities.

3. Ineligible Recipients. Without the prior written consent of the Contracting Officer, the Contractor may not award any grant to: (1) any entity which is a "private voluntary organization" ("PVO") but has not registered as such with USAID; (2) any entity whose name appears on the "List of Parties Excluded from Federal Procurement and Non-Procurement Programs"; (3) any "public international organization"; (4) any governmental organization; (5) any entity whose country of origin/nationality is not the Cooperating Country; or (6) any entity affiliated with the Contractor or any of its directors, officers or employees. In the case of an unregistered PVO which the Contractor believes might be able to undertake useful grant activities to further the Program, the Contractor may encourage the organization to register as a PVO with USAID, provided that the Contractor makes no promise, actual or implied, that the organization shall thereafter receive a grant.

4. Automated Directives System 303. The Contractor shall follow all requirements of USAID's Automated Directives System (ADS) 303 on grant making and administration, as well as the specially modified grant provisions attached as Appendix 4 hereto, except as modified by this Agreement or as approved through a specific written deviation granted by the Contracting Officer.

5. Award of Grants. Without limiting the foregoing, this Section sets forth a brief overview of the Contractor's grant-making responsibilities. Grant-making duties include: (1) with USAID, establishing eligibility and selection criteria; (2) selecting grant recipients in accordance with competition requirements; and (3) after securing USAID's approval, drafting, negotiating and awarding grants.

Selection Criteria for the Program. Illustrative grant activities to be supported through the Program are contained in Section C.9.1 of the Contract. It is anticipated that up to 150 small grants in 25 districts will be awarded to Egyptian NGOs/PVOs which support community health services within the framework of district plans. Such support may include community needs assessment and planning as well as implementation, education and service delivery activities. USAID will have substantial involvement in the selection criteria for the grantees. Should the option under the Contract be exercised, it is anticipated that an additional 70 small grants in 60 additional target districts will be awarded.

Competition for Grants. ADS 303 calls for competition to be used to the maximum extent practicable in selecting grantees. In general, an Invitation for Applications ("IA") is to be published in appropriate publications and applications from a minimum of two applicants must be considered. The Contracting Officer must give his or her prior approval to all IAs before publication. In the absence of, or in addition to, publicizing the IA in appropriate publications, the Contractor shall, inter alia, disseminate information on the IA in public meetings, distribute flyers or brochures, affix posters or handbills in appropriate places, etc. in the target districts. It is anticipated that the Contractor will develop a blanket IA suitable for use in all districts throughout the life of this Agreement; once the Contracting Officer has approved the blanket IA, no further approval shall be required unless the Contractor proposes changes to the blanket IA.

The Contractor will convene a Review Panel, not more frequently than monthly, composed of appropriately qualified and independent personnel (which shall include a USAID Technical Office representative), approved in advance by the Contracting Officer, to consider grant applications. Applications will be evaluated in accordance with the selection criteria set forth in the IA. Based on the work of the Review Panel, the Contractor will notify the Contracting Officer of its recommendation concerning the proposed grant award(s), including the identity of the recipient(s), the amount of the grant(s) and the nature of the proposed grantee activities. The Contractor shall not recommend for a grant any organization unless, in accordance with ADS 303, it shall have made a positive written determination that the organization is responsible (with the necessary management, financial systems, personnel and travel policies, etc., specified in ADS 303). Should there be questions concerning these responsibility matters, the Contractor shall consult with the Contracting Officer as appropriate, in its discretion. **In all cases, USAID's prior approval is required before the Contractor may award any grant.**

ADS 303 permits the award of grants noncompetitively under certain circumstances. If the Contractor intends to make a noncompetitive award, it shall submit to the Contracting Officer for prior approval a written justification based on one of the competition exceptions set forth in ADS 303.

Form of Grant. Each grant awarded by the Contractor on behalf of USAID under this Agreement shall be in the following form: (1) a grant letter substantially in the form of Appendix 1 hereto; (2) a Schedule substantially in the form of Appendix 2 hereto; (3) a Program Description to be developed by the grantee and the Contractor; and (4)(i) the mandatory standard provisions attached as Appendix 4A hereto, and (ii) any applicable required-as-applicable standard provisions from the list attached as Appendix 4B hereto.

Limitations. Grants may only be awarded to Egyptian organizations operating (or planning to operate) in the 25 target districts (and 60 additional districts under the contract option) and may not exceed $25,000 per grant without the approval of the Contracting Officer. In addition, grants may not finance: 1) international travel and transportation, 2) capital expenditures (including construction) or equipment having a useful life of

more than one year and an acquisition cost of $5,000 or greater (equipment necessary to support activities under the Small Grant Program shall be procured by the Contractor under the Commodity Procurement Program (Sections C.8.2 and C.10.8 in the Contract), 3) subawards or subcontracts, 4) participant training, 5) indirect costs or 6) human subject research (as defined by (22 CFR 225) without written approval, in advance, from the Contracting Officer.

6. Term of Grants. The Contractor may not award any grant for a period extending beyond the estimated termination or completion date of its Contract.

7. Amount of Grants. The total estimated value of the grant program under the Contract is $2,000,000. The Contractor will not execute grants aggregating more than this amount unless the option under the contract is exercised in which case the Contractor will not execute grants aggregating more than $3,000,000.

8. Funding of Grants; Separate Account. The Contractor will give periodic advances to the recipients of all grants hereunder, in accordance with the Required-as-Applicable Standard Provision (No. 1 of Appendix 4). The Contractor will receive reimbursement from USAID of such advanced amounts through its usual vouchering procedure under the Contract. All interest and other refunds by grant recipients hereunder will be made to a special, non-commingled, interest-bearing account established by the Contractor (the "Separate Account"). The Contractor has no beneficial interest in any funds in the Separate Account. Funds in the Separate Account may be used for grant-making or shall be paid annually to USAID, as directed by the Contracting Officer. At the conclusion of the Contract, any funds remaining in the Separate Account shall be returned to USAID. The Contractor may also make grants utilizing payment on a reimbursement basis, in accordance with the Required-as-Applicable Standard Provision (No. 2 of Appendix 4).

9. Right of USAID to Supersede Contractor Decisions. Recognizing the paramount interest of the United States and USAID in grant-making, the parties agree that USAID may, in its sole discretion, supersede any decision, act or omission taken by the Contractor in respect of any grant made by it, or proposed to be made by it, hereunder. Notwithstanding any other provision of this Agreement, USAID retains the right, at all times hereunder, through the Contracting Officer, to (1) dictate a different decision with respect to the award or administration of any grant; (2) rectify an omission by the Contractor with respect to the award or administration of any grant; (3) take over the administration of any grant awarded hereunder; and/or (4) terminate, in whole or in part, the Contractor's authorities under this Agreement.

10. Amendment of Grants. The Contractor has the authority to make, without the prior approval of the Contracting Officer, written amendments to awarded grants, provided that the amendments (1) are of a minor or administrative nature, (2) do not change the obligated amount or the purposes of any grant, (3) are satisfactory to the grantee, and (4) are promptly transmitted to the Contracting Officer. The Contracting Officer must give his or her prior approval to all other amendments.

11. Conflicts. In performing its duties hereunder, the Contractor shall scrupulously avoid any conflicts of interest. Should any conflict of interest arise, the Contractor shall immediately notify the Contracting Officer as to the conflict and the Contractor's proposed solution for avoiding the conflict, and the Contractor shall follow the instructions of the Contracting Officer.

12. Records Retention. The Contractor will act as custodian for USAID of all records relating to grants under the Contract. The Contractor will preserve all records with respect to its grant-making (including with respect to the deliberations of all Review Panels) and grant administration hereunder.

Copies of all reports received from grantees will be promptly forwarded to the Contracting Officer or his/her designee. USAID and the Comptroller General shall have full access to all documents, papers and others records of the Contractor with respect to its duties hereunder. At the conclusion of the Contract, the Contractor shall consult with the Contracting Officer for direction as to which records shall be transferred to USAID.

13. Liability. The Contractor shall have no liability to USAID with respect to its awarding and administration of grants on behalf of USAID hereunder, or with respect to the acts or omissions of its grantees hereunder, except to the extent that losses to the USAID foreign assistance program arise from the Contractor's negligence or bad faith in performing its responsibilities hereunder.

14. Publications. With reference to Required as Applicable Standard Provision No. 5 entitled "Publications and Media Releases" the Contractor shall be responsible for forwarding one copy of all published works referenced in paragraph (c) to POL/CDIE, 1300 Pennsylvania Avenue, N.W., Washington, DC 20523-1802.

15. Language. The text of all grants awarded shall be in English. Grants may be prepared in an Arabic version as well. However, in the event that the text is prepared in both languages, the text of the grant shall provide that, in the case of any conflict between the English and Arabic versions, the English language version shall prevail.

John Snow, Inc.

9 March 1999

Date

Donella J. Russell, Contracting Officer

3/9/99

Date



30-AUG-00 09:28 FROM:USAID HHMG CAIRO EGYPT. ID:3513819 PAGE 5/5