IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN SNOW, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 06-0097C |
| | § | (Judge Thomas C. Wheeler) |
| THE UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims, Plaintiff John Snow, Inc. ("JSI"), by and through counsel, submits these proposed findings of uncontroverted facts in support of its motion for partial summary judgment on Count I of the Complaint.

1. Plaintiff John Snow, Inc. ("JSI") is a Massachusetts corporation with its principal place of business at 44 Farnsworth Street, Boston, Massachusetts 02210-1211. See Affidavit of Kenneth J. Olivola. JSI is a Massachusetts corporation with its principal place of business at 44 Farnsworth Street, Boston, Massachusetts 02210-1211. JSI provides technical and managerial assistance to public health programs worldwide. With more than 25 years of experience, JSI has implemented projects in 84 countries. JSI frequently contracts with the United States through the United States Agency for International Development. *See Affidavit of Kenneth J. Olivola*.

2. On March 9, 2005, the United States Agency for International Development, through a unilateral determination made by its Contracting Officer, issued a Final Decision and Unilateral Debt Determination ("Final Decision") constituting a final Notice of

Disallowance that JSI is indebted to the government in the amount of $872,327.18. *See Complaint Exhibit 1*.

3. The disallowance related to JSI's procurement in 2001 of 119 Preemicare incubators. *See Complaint Exhibit 1*.

4. The incubators were procured by JSI under the Healthy Mother/Healthy Child Results Package, USAID Contract No. 263-C-0098-00041-00 (the "Contract"), entered into with the United States on or about April 6, 1998. *See SJ Exhibit 1;*[1] *and Complaint Exhibit 1*.

5. The Contract was a Cost-Plus-Fixed Fee (CPFF) completion contract. *See SJ Exhibit 1*, Contract page 3 of 109.

6. Under the Contract, JSI procured 119 Preemicare, Inc. infant incubators for an amount totaling $785,880.35. [IFB 8, Purchase Order Nos. 205 and 205A] Approvals for the procurements were issued by USAID's Contracting Officer, Cynthia Judge, on June 11, 2001 and November 29, 2001. *See SJ Exhibit 2*. With these approvals, USAID authorized JSI to enter into subcontracts with ICS Technologies, Inc. ("ICS") for the purchase of the incubators. These incubators were also included in the two base period procurement plan milestones which were approved by the Contracting Officer's Technical Representative (COTR) and copied to the Contracting Officer on April 26, 1999 and December 10, 2000. The referenced milestone approvals dated April 26, 1999 and December 10, 2000, are attached as *SJ Exhibit 3*. These procurement plans included 55 and 94 incubators, respectively. As per Contract Modification No. 4 dated October 9, 2000 *(see SJ Exhibit 4)*, the Contracting Officer (CO) delegated authority to the COTR for review of the milestones to

[1] "SJ" Exhibits refers to the Exhibits attached to the Memorandum in Support of Plaintiff's Motion for Summary Judgment.

determine if they were met and to approve payment of JSI's fee. *See USAID Answer ¶6; and Affidavit of Kenneth J. Olivola.*

7. JSI and ICS entered into Purchase Contract No. 04-01-205 dated June 13, 2001, under which ICS agreed to supply ninety-four (94) Preemicare incubators for the purchase price of $620,274.55. *See Exhibit 5*. JSI and ICS entered into Amendment #1 to Purchase Contract No. 04-01-205 as of November 30, 2001, under which ICS agreed to supply twenty-five (25) additional incubators for the purchase price of $165,605.80. *See SJ Exhibit 6.*

8. JSI paid ICS the sum of $785,880.35 for the costs of the incubators. This is the amount of costs which USAID paid JSI and subsequently disallowed in its Final Decision. *See Complaint Exhibit 1*. Although USAID issued a Notice of Disallowance on March 9, 2005, USAID had paid JSI for the procurement costs of the incubators in 2002, three years earlier. JSI also had paid ICS for the procurement costs of these incubators in 2002. *See Affidavit of Kenneth J. Olivola.*

9. The 119 Preemicare incubators were delivered to USAID/Egypt's consignee: HM/HC, USAID Project No. 283-0242, Ministry of Health, 21 Misr Helwan Agricultural Road, Maadi, Cairo, Egypt. *See SJ Exhibit 8; Affidavit of Kenneth J. Olivola; and USAID Answer ¶8*

10. As soon as the incubators arrived in Egypt, JSI's Chief of Party, Reginald G. Gipson, M.D., facilitated their release from Egyptian customs by requesting that exemption letters be addressed to the Director of Exemption Customs Administration at Alexandria Port for the release of the shipment. JSI sent letters on January 14, 2002, January 21, 2002 and April 2, 2002. *See Exhibit 17.*

11. Shipments of the 119 Preemicare incubators cleared Egyptian customs on January 26, 2002, February 12, 2002 and April 29, 2002. *See Exhibit 8; and Affidavit of Kenneth J. Olivola*.

12 When the 119 Preemicare incubators arrived at the Alexandria, Egypt port and cleared customs, they immediately became the property of Egypt and its public agency, the MOHP. *See Affidavit of Kenneth J. Olivola; and SJ Exhibit 16 – AIDAR 752.245-71.*

13 Even though JSI assisted the MOHP in transporting the incubators, the incubators became the property of the Cooperating Government, Egypt and the MOHP upon clearing customs, and the incubators were accepted by USAID and its consignee, Egypt and the MOHP, on the customs clearance dates. *See Affidavit of Kenneth J. Olivola; and SJ Exhibit 16 – AIDAR 752.245-71.*

14 According to USAID's Final Decision, Item 2, the incubators were delivered and installed at various MOHP facilities between May and July 2002. *See Complaint Exhibit 1; and USAID Answer ¶8.*

15 The Contract incorporated by reference FAR 52.246-3, *Inspection of Supplies - Cost Reimbursement*, in Section E-1 of the Contract [page 65 of 109]. *See SJ Exhibit 1*. FAR 52.246-3(e) provides that unless the contract specifies otherwise, "the Government shall accept supplies as promptly as practicable after delivery, and supplies shall be deemed accepted 60 days after delivery, unless accepted earlier."

16 As a matter of the Contract and the FAR, the Government accepted the 119 Preemicare incubators upon delivery to the Alexandria, Egypt port of entry and release from customs. *See SJ Exhibit 1; SJ Exhibit 16 – AIDAR 752.245-71.*

17 As a matter of the Contract and the FAR, the Government's acceptance of the incubators could not have occurred, and did not occur, later than 60 days after each shipment cleared Egyptian customs: January 26, 2002, February 12, 2002, and April 29, 2002. *See SJ Exhibit 1; SJ Exhibit 8; and Affidavit of Kenneth J. Olivola.*

18 Final acceptance of the incubators is further evidenced by the fact that the Government paid JSI in 2002 for the procurement costs of the 119 Preemicare incubators. *See Complaint Exhibit 1; and Affidavit of Kenneth J. Olivola*

19. If JSI had an obligation to replace or correct supplies that were non-confirming at the time of delivery, the obligation was for no more than six (6) months. See SJ Exhibit 1, incorporating FAR 52.246-3(f).

20. Although USAID contends in its Final Decision that the incubators are non-conforming, USAID failed to require JSI to replace or correct the alleged non-conforming supplies within six (6) months after acceptance.

21. The Contract does not give the Government a post-acceptance right to recover the costs of the incubators. The Cost Plus Fixed Fee Contract affords the Government no basis for disallowing the costs of the incubators. *See SJ Exhibit 1*.

22. Under the Cost Plus Fixed Fee Contract, the Government assumed the risk of performance because the contractor, JSI, received only what it spent plus a previously determined fee. *See SJ Exhibit 1; and Affidavit of Kenneth J. Olivola.*

23. JSI's costs of the 119 original incubators are reimbursable under the Contract. [Contract page 5 of 109]. "The U.S. dollar costs allowable shall be limited to reasonable, allocable and necessary costs determined in accordance with FAR 52.216-7, Allowable Cost and Payment, FAR 52.216-8, Fixed Fee, if applicable, and AIDAR 752.7003, Documentation

for Payment." FAR 52.216-7(b)(1) states that for the "purpose of reimbursing allowable costs, . . . the term 'costs' includes only – (i) Those recorded costs that, at the time of the request for reimbursement, the Contractor has paid by cash, check, or other form of actual payment for items or services purchased directly for the contract;" The FAR explicitly defines reimbursable costs as those costs paid by the Contractor for items purchased directly for the Contract. JSI paid ICS for the costs of the 119 Preemicare incubators. *See SJ Exhibit 1.*

24. On March 9, 2005, USAID issued its Final Decision and Unilateral Debt Determination constituting a final Notice of Disallowance. In this unilateral determination by the Contracting Officer, USAID claimed that JSI was indebted to the government in the amount of $872,327.18 because JSI had refused to provide a refund for incubators which the government contended were "contractually non-compliant". USAID claimed that JSI was indebted to the Government as follows:

| | |
|---|---|
| Price of the 119 Incubators: | $785,880.35 |
| Fee: | $ 23,576.41 |
| Procurement Services Charge: | $ 62,870.43 |
| Total | $872,327.18 |

*See Complaint Exhibit 1.*

25. Through administrative offsets of monies owed by USAID to JSI on other aspects of the Contract, USAID collected in 2005 the sum of $872,327, plus interest. *See Affidavit of Kenneth J. Olivola.*

26. USAID's disallowance of the cost of 119 incubators ($785,880.35), its disallowance of JSI's Fee ($23,576.41) and its disallowance of JSI's Procurement Services

Charge ($62,870.43) is a breach of the Contract. *See SJ Exhibits 1- 17; and Affidavit of Kenneth J. Olivola.*

27. USAID's administrative offset against other invoices due and payable to JSI and the collection from JSI of the claimed indebtedness ($872,327.18) is a breach of the Contract. *See SJ Exhibits 1- 17; and Affidavit of Kenneth J. Olivola.*

28. USAID's administrative offset against other invoices due and payable to JSI and the collection from JSI of interest on the claimed indebtedness is a breach of the Contract. *See SJ Exhibits 1- 17; and Affidavit of Kenneth J. Olivola.*

29. USAID's requirement that JSI incur the costs of re-exporting the incubators from Egypt to the United States, and the resulting storage facilities costs, are material breaches of the Contract. *See SJ Exhibits 1- 17; and Affidavit of Kenneth J. Olivola.*

Respectfully submitted,

________/s/___________________

Daniel A. Ball
Ball Law Offices
4416 East West Highway, Suite 400
Bethesda, Maryland 20814-4568
Direct: (301) 634-3147
Fax: (301) 215-9297
E-Mail: dball@dablaw.com

Dated: October 26, 2006

Counsel for Plaintiff John Snow, Inc.