IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN SNOW, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-97C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits these responses to the proposed findings of uncontroverted fact ("Proposed Fact(s)") submitted by plaintiff, John Snow, Inc. ("JSI").[1]

**General Objections**

RCFC 56(h)(2) permits a party opposing summary judgment to file proposed findings of uncontroverted fact only as to "relevant matters." We object to JSI's Proposed Facts to the extent they discuss matters not relevant to JSI's motion for summary judgment. Facts that are irrelevant or immaterial to the pending motion for partial summary judgment should be disregarded by the Court, even if there is a disagreement regarding such facts. To the extent that we indicate that we agree with any Proposed Fact asserted by JSI, this does not constitute an agreement that the citation following the proposed fact is accurate or otherwise supports the

[1] The paragraph numbers contained in this document correspond to those contained in plaintiff's proposed findings of uncontroverted fact. Our response to each proposed fact is set forth immediately below the proposed fact, in bold face type.

proposed fact. We also object to JSI's Proposed Facts because, rather than providing a Proposed Facts containing concise, separately numbered paragraphs, many of the paragraphs contained in JSI Proposed Facts are excessively and unnecessarily long. Further, we object upon the ground that a large number of JSI's Proposed Facts constitute legal conclusions or contain legal argument.

**DEFENDANT'S REPSONSES**

1. Plaintiff John Snow, Inc. ("JSI") is a Massachusetts corporation with its principal place of business at 44 Farnsworth Street, Boston, Massachusetts 02210-1211. See Affidavit of Kenneth J. Olivola. JSI is a Massachusetts corporation with its principal place of business at 44 Farnsworth Street, Boston, Massachusetts 02210-1211. JSI provides technical and managerial assistance to public health programs worldwide. With more than 25 years of experience, JSI has implemented projects in 84 countries. JSI frequently contracts with the United States through the United States Agency for International Development. *See Affidavit of Kenneth J Olivola.*

**Defendant cannot agree or disagree with the allegations in this paragraph because they are based upon information within the purview of JSI.**

2. On March 9, 2005, the United States Agency for International Development, through a unilateral determination made by its Contracting Officer, issued a Final Decision and Unilateral Debt Determination ("Final Decision") constituting a final Notice of Disallowance that JSI is indebted to the government in the amount of $872,327.18. *See Complaint Exhibit 1.*

**Agrees**.

3. The disallowance related to JSl's procurement in 2001 of 119 Preemicare incubators. *See Complaint Exhibit 1.*

**Agrees.**

4. The incubators were procured by JSI under the Healthy Mother/Healthy Child Results Package, USAID Contract No. 263-C-0098-00041-00 (the "Contract"), entered into with the United States on or about April 6, 1998. *See SJ Exhibit 1and Complaint Exhibit 1.*

**Agrees.**

5. The Contract was a Cost-Plus-Fixed Fee (CPFF) completion contract. *See SJ Exhibit* 1, Contract page 3 of 109.

**The Government agrees that the contract was a CPFF completion contract and refers to the document itself for its complete contents.**

6. Under the Contract, JSI procured 119 Preemicare, Inc. infant incubators for an amount totaling $785,880.35. [IFB 8, Purchase Order Nos. 205 and 205A] Approvals for the procurements were issued by USAID's Contracting Officer, Cynthia Judge, on June 11, 2001 and November 29, 2001. *See SJ Exhibit* 2. With these approvals, USAID authorized JSI to enter into subcontracts with ICS Technologies, Inc. ("ICS") for the purchase of the incubators. These incubators were also included in the two base period procurement plan milestones which were approved by the Contracting Officer's Technical Representative (COTR) and copied to the Contracting Officer on April 26, 1999 and December 10, 2000. The referenced milestone approvals dated April 26, 1999 and December 10, 2000, are attached as *SJ Exhibit* 3. These procurement plans included 55 and 94 incubators, respectively. As per Contract Modification No.4 dated October 9, 2000 *(see SJ Exhibit 4),*the Contracting Officer (CO) delegated authority to the COTR for review of the milestones to determine if they were met and to approve payment of JSl's fee. *See USAID Answer* ¶6; *and Affidavit of Kenneth J. Olivola.*

**Agrees. However, the Government disagrees with any intimation that the incubators were properly approved under the pertinent procurement plan. The Government also disputes any contention or inference that JSI fulfilled its obligations under this contract. JSI failed to provide functioning and conforming incubators. The incubators were not suitable for their intended use. Thus, for the reasons detailed in our memorandum of law in opposition to JSI's motion for summary judgment, JSI was the party in breach of contract, not the Government.**

7. JSI and ICS entered into Purchase Contract No. 04-01-205 dated June 13, 2001, under which ICS agreed to supply ninety-four (94) Preemicare incubators for the purchase price of $620,274.55. *See Exhibit* 5. JSI and ICS entered into Amendment #1 to Purchase Contract No. 04-01-205 as of November 30, 2001, under which ICS agreed to supply twenty-five (25) additional incubators for the purchase price of $165,605.80. *See SJ Exhibit 6.*

**Agrees and refers to the document itself for its complete contents.**

8. JSI paid ICS the sum of $785,880.35 for the costs of the incubators. This is the amount of costs which USAID paid JSI and subsequently disallowed in its Final Decision. *See Complaint Exhibit* 1. Although USAID issued a Notice of Disallowance on March 9, 2005, USAID had paid JSI for the procurement costs of the incubators in 2002, three years earlier. JSI also had paid ICS for the procurement costs of these incubators in 2002. *See Affidavit of Kenneth J Olivola.*

**Defendant cannot agree or disagree with the allegations in the fourth sentence of JSI Proposed Fact No. 8, that JSI also had paid ICS for the procurement costs of these incubators in 2002, because they are based upon information within the purview of JSI. Defendant admits the remainder of the allegations in the paragraph, except to clarify that USAID had paid JSI <u>approximately</u> three years prior to the March 9, 2005 notice of disallowance discussed in the third sentence of JSI Proposed Fact. The Government further states that its payment for the incubators did not preclude it from taking the administrative offset at issue in this case, for reasons discussed in our memorandum of law.**

9. The 119 Preemicare incubators were delivered to USAID/Egypt's consignee: HM/HC, USAID Project No. 283-0242, Ministry of Health, 21 Misr Helwan Agricultural Road, Maadi, Cairo, Egypt. *See SJ Exhibit* 8; *Affidavit of Kenneth J. Olivola; and USAID Answer ¶ 8.*

**Agrees that the incubators eventually were delivered by JSI.**

10. As soon as the incubators arrived in Egypt, JSl's Chief of Party, Reginald G. Gipson, M.D., facilitated their release from Egyptian customs by requesting that exemption letters be addressed to the Director of Exemption Customs Administration at Alexandria Port for the release of the shipment. JSI sent letters on January 14, 2002, January 21, 2002 and April 2, 2002. *See Exhibit 17.*

**Agrees. However, the Government disputes any allegation or implication that the incubators were "accepted"; in fact, JSI retained custody and control of the incubators for a period of time after they cleared Egyptian Customs, as described in our memorandum of law.**

11. Shipments of the 119 Preemicare incubators cleared Egyptian customs on January 26, 2002, February 12, 2002 and April 29, 2002. *See Exhibit* 8; *and Affidavit of Kenneth J. Olivola.*

**Agrees.**

12. When the 119 Preemicare incubators arrived at the Alexandria, Egypt port and cleared customs, they immediately became the property of Egypt and its public agency, the MOHP. *See Affidavit of Kenneth J. Olivola; and SJ Exhibit* 16 -*AIDAR 752.245-71.*

**Agrees. However, the Government disputes the relevance of this allegation, for the reasons set forth in our memorandum of law.**

13. Even though JSI assisted the MOHP in transporting the incubators, the incubators became the property of the Cooperating Government, Egypt and the MOHP upon clearing customs, and the incubators were accepted by USAID and its consignee, Egypt and the MOHP, on the customs clearance dates. *See Affidavit of Kenneth J. Olivola; and SJ Exhibit* 16 -*AIDAR 752.245-71.*

**Disagrees. The Government disputes any allegation or implication that the incubators were accepted; in fact, JSI retained custody and control of the incubators for a period of time after they cleared Egyptian Customs, as described in our memorandum of law. Further, regardless of JSI characterizations, JSI delivered defective incubators and breached the contract, and, as a result, the Government was entitled to take the administrative offset at issue in this case. These issues are explored in detail in our memorandum of law.**

14. According to USAID's Final Decision, Item 2, the incubators were delivered and installed at various MOHP facilities between May and July 2002. *See Complaint Exhibit 1; and USAID Answer* ¶ 8.

**Agrees and refers to the document itself for its complete contents.**

15. The Contract incorporated by reference FAR 52.246-3, *Inspection of Supplies - Cost Reimbursement*, in Section E-l of the Contract [page 65 of 109]. *See SJ Exhibit 1*. FAR 52.246-3(e) provides that unless the contract specifies otherwise, "the Government shall accept

supplies as promptly as practicable after delivery, and supplies shall be deemed accepted 60 days after delivery, unless accepted earlier."

**Agrees and refers to the contract and the FAR provision cited for its complete contents. However, the Government disputes that the cited provision precluded it from taking the administrative offset at issue in this case and further refers the Court to our memorandum of law for other provisions of the contract and FAR that have a bearing upon JSI's motion.**

16. As a matter of the Contract and the FAR, the Government accepted the 119 Preemicare incubators upon delivery to the Alexandria, Egypt port of entry and release from customs. *See SJ Exhibit* 1; *SJ Exhibit* 16 *-AIDAR 752.245-71.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion. To the extent it may be deemed an allegation of fact, we deny that the Government "accepted" the incubators. Indeed, as detailed in our memorandum of law, JSI: (i) almost immediately became aware of the numerous deficiencies in the incubators (to the extent that it was not aware of the deficiencies at the time of delivery); (ii) freely acknowledged these deficiencies; and (iii) made repeated attempts to cure the deficiencies. Further, regardless of JSI's characterizations, JSI delivered defective incubators and breached the contract, and, as a result, the Government was entitled to take the administrative offset at issue in this case. These issues are explored in detail in our memorandum of law.**

17. As a matter of the Contract and the FAR, the Government's acceptance of the incubators could not have occurred, and did not occur, later than 60 days after each shipment cleared Egyptian customs: January 26, 2002, February 12, 2002, and April 29, 2002. *See SJ Exhibit* 1; *SJ Exhibit* 8; *and Affidavit of Kenneth J Olivola.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion. To the extent it may be deemed an allegation of fact, it is denied. These issues are explored in**

**detail in our memorandum of law.**

18. Final acceptance of the incubators is further evidenced by the fact that the Government paid JSI in 2002 for the procurement costs of the 119 Preemicare incubators. *See Complaint Exhibit* 1; *and Affidavit of Kenneth J Olivola*

**Denies. JSI was not entitled to payment for the defective incubators and, in any event, the Government was within its rights to recoup the monies paid.**

19. If JSI had an obligation to replace or correct supplies that were non-conforming at the time of delivery, the obligation was for no more than six (6) months. See SJ Exhibit 1, incorporating FAR 52.246-3(f).

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion. To the extent it may be deemed an allegation of fact, it is denied. For reasons discussed in our memorandum of law: (1) the Government did not waive its right to obtain reimbursement for the defective incubators, or to seek other remedies; (2) the Government acted in a timely fashion; and (3) the Government properly took the administrative offset at issue in this litigation.**

20. Although USAID contends in its Final Decision that the incubators are non-conforming, USAID failed to require JSI to replace or correct the alleged non-conforming supplies within six (6) months after acceptance.

**Admits that we contend the incubators were nonconforming. The Government denies the remaining allegations in the Proposed Fact. As detailed in our memorandum of law, JSI: (i) almost immediately became aware of the numerous deficiencies in the incubators (to the extent that it was not aware of the deficiencies at the time of delivery); (ii) freely acknowledged these deficiencies; and (iii) made repeated attempts to cure the deficiencies. This directly contradicts JSI's assertion that the Government did not require**

**JSI to timely replace or repair the incubators. It was clearly understood by USAID and JSI, based in part upon JSI's own actions and representations, that the incubators were deficient and that those deficiencies required correction, and JSI was well aware that USAID required that the incubators be replaced or their deficiencies corrected. See Email from Reginald Gipson to ICS (June 10, 2003), A72-74; Letter from Reginald Gipson to MOHP (June 1, 2004), A65.**

21. The Contract does not give the Government a post-acceptance right to recover the costs of the incubators. The Cost Plus Fixed Fee Contract affords the Government no basis for disallowing the costs of the incubators. *See SJ Exhibit 1*.

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion. To the extent it may be deemed an allegation of fact, it is denied. For reasons discussed in our memorandum of law, the contract and the FAR provided the Government with the right to disallow the costs of the incubators and to recover those costs from JSI. Further, the Government disputes JSI's characterization that the incubators were "accepted."**

22. Under the Cost Plus Fixed Fee Contract, the Government assumed the risk of performance because the contractor, JSI, received only what it spent plus a previously determined fee. *See SJ Exhibit* 1; *and Affidavit of Kenneth J Olivola.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion. To the extent it may be deemed an allegation of fact, it is denied. Further, we deny JSI's allegations for the reasons set forth at length in our memorandum of law.**

23. JSl's costs of the 119 original incubators are reimbursable under the Contract. [Contract page 5 of 109]. "The U.S. dollar costs allowable shall be limited to reasonable, allocable and necessary costs determined in accordance with FAR 52.216-7, Allowable Cost and Payment, FAR 52.216-8, Fixed Fee, if applicable, and AIDAR 752.7003, Documentation for Payment. FAR 52.216-7(b)(I) states that for the "purpose of reimbursing allowable costs, . . . the term 'costs' includes only - (i) Those recorded costs that, at the time of the request for

reimbursement, the Contractor has paid by cash, check, or other form of actual payment for items or services purchased directly for the contract." The FAR explicitly defines reimbursable costs as those costs paid by the Contractor for items purchased directly for the Contract. JSI paid ICS for the costs of the 119 Preemicare incubators. *See SJ Exhibit.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion and legal argument. To the extent it may be deemed an allegation of fact, it is denied for the reasons set forth in our memorandum of law, except that the Government refers to the FAR and AIDAR provisions themselves for their contents. Further, costs JSI incurred for incubators that were defective and that failed to comply with contractual and legal requirements were neither reasonable nor otherwise reimbursable.**

24. On March 9, 2005, USAID issued its Final Decision and Unilateral Debt Determination constituting a final Notice of Disallowance. In this unilateral determination by the Contracting Officer, USAID claimed that JSI was indebted to the government in the amount of $872,327.18 because JSI had refused to provide a refund for incubators which the government contended were "contractually non-compliant". USAID claimed that JSI was indebted to the Government as follows:

| | |
|---|---|
| Price of the 119 Incubators: | $785,880.35 |
| Fee: | $ 23,576.41 |
| Procurement Services Charge: | $ 62,870.43 |
| Total | $872,327.18 |

*See Complaint Exhibit 1.*

**Agrees and refers to the document itself for its complete contents.**

25. Through administrative offsets of monies owed by USAID to JSI on other aspects of the Contract, USAID collected in 2005 the sum of $872,327, plus interest. *See Affidavit of Kenneth J. Olivola.*

**Agrees.**

26. USAID's disallowance of the cost of 119 incubators ($785,880.35), its disallowance of JSl's Fee ($23,576.41) and its disallowance of JSl's Procurement Services Charge ($62,870.43) is a breach of the Contract. *See SJ Exhibits* 1- 17; *and Affidavit of Kenneth J. Olivola.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion and legal argument. To the extent it may be deemed an allegation of fact, we disagree with it for reasons set forth in our memorandum of law. JSI, not the Government, breached the contract.**

27. USAID's administrative offset against other invoices due and payable to JSI and the collection from JSI of the claimed indebtedness ($872,327.18) is a breach of the Contract. *See SJ Exhibits* 1- 17; *and Affidavit of Kenneth J. Olivo/a.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion and legal argument. To the extent it may be deemed an allegation of fact, we disagree with it for reasons set forth in our memorandum of law. JSI, not the Government, breached the contract.**

28. USAID's administrative offset against other invoices due and payable to JSI and the collection from JSI of interest on the claimed indebtedness is a breach of the Contract. *See SJ Exhibits* 1- 17; *and Affidavit of Kenneth J. Olivola.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion and legal argument. To the extent it may be deemed an allegation of fact, we disagree with it for reasons set forth in our memorandum of law. JSI, not the Government, breached the contract.**

29. USAID's requirement that JSI incur the costs of re-exporting the incubators from Egypt to the United States, and the resulting storage facilities costs, are material breaches of the Contract. *See SJ Exhibits* 1- 17; *and Affidavit of Kenneth J. Olivola.*

**Defendant objects to this Proposed Fact because it constitutes a legal conclusion and legal argument. To the extent it may be deemed an allegation of fact, we disagree with it for reasons set forth in our memorandum of law. JSI, not the Government, breached the contract.**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

*s/Deborah A. Bynum*

DEBORAH A. BYNUM
Assistant Director

*s/Richard P. Schroeder*

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

June 29, 2007

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 29th day of June 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to plaintiff by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard P. Schroeder