IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN SNOW, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-97C (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

In compliance with Appendix A of the Rules of the United States Court of Federal Claims, the parties submit this Joint Preliminary Status Report.

**(A)** Does the court have jurisdiction over the action?

Plaintiff believes that this Court possesses jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 605. Defendant is currently unaware of any reason why this Court would lack subject matter jurisdiction to entertain plaintiff's complaint.

**(B)** Should the case be consolidated with any other case and, if so, why?

No party is aware of any case with which this case should be consolidated.

**(C)** Should trial of liability and damages be bifurcated and, if so, why?

Assuming the case is tried, the parties are not currently aware of any reason that the trial should be bifurcated.

**(D)** Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?

The parties are not currently aware of any reason why proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal. The

parties are not aware of any related cases in this or any other tribunal.

**(E)** In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?

No party presently anticipates seeking a remand or suspension.

**(F)** Will additional parties be joined?

At this time, no party anticipates joining any additional parties.

**(G)** Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?

At this time, neither party anticipates filing another dispositive motion.

**(H)** What are the relevant factual and legal issues?

Many relevant issues are described in detail in the Court's opinion in John Snow, Inc. v. United States, No. 06-97C, --- Fed. Cl. ---- (Oct. 12, 2007). Specifically, the Court found a disagreement on four issues that precluded the granting of JSI's motion for partial summary judgment:

(1) Whether the Commercial Items clause applies to the contract;

(2) When, if ever, did the United States Agency for International Development (USAID) accept the allegedly nonconforming incubators;

(3) Assuming that acceptance occurred at some point after JSI delivered the incubators to Egypt, when, if ever, did USAID exercise its post-acceptance rights under the Inspection clause or the Commercial Items clause; and

(4) Whether the incubators were nonconforming.

**Plaintiff's Position:**

(1) Whether the government's disallowance of the costs of the incubators is a

breach of the contract in that the government impermissibly shifts liability for replacement or correction of the incubators to JSI even though the contract incorporates Federal Acquisition Regulation 52.246-3(f), which provides: "Except as otherwise provided in paragraph (h) of this clause, the cost of replacement or correction shall be included in allowable costs, determined as provided in the Allowable Cost and Payment clause, but no additional fee shall be paid."

(2) Whether the government's rejection of the incubators is a breach of the contract because rejection occurred more than 60 days after delivery and the 119 Preemicare incubators had been accepted pursuant to the contract which incorporates Federal Acquisition Regulation 52.246-3(e), Inspection of Supplies – Cost Reimbursement

(3) Whether the government's rejection of the incubators is a breach of contract because the contract which incorporates Federal Acquisition Regulations 52.246-3(f) provides that, even after acceptance, the Government has no later than six months after acceptance of the supplies to be delivered to require the Contractor to replace or correct any supplies that are nonconforming at time of delivery.

(4) Whether JSI is liable for the costs of the incubators, even if they were nonconfirming at the time of delivery, when the contract incorporates Federal Acquisition Regulation 52.246-3(j) which provides: "The Contractor shall have no obligation or liability under this contract to replace supplies that were nonconforming at the time of delivery, except as provided in this clause or as may be otherwise provided in the contract."

(5) Whether the Government's disallowance of JSI's Fee ($23,576.41) and Procurement Services Charge ($62,870.43) is a breach of contract in that (i) JSI properly earned the Fee and Charge by rendering services which were accepted and paid by the government, and (ii) there were no alleged "defects" or "non-conformity" in the services provided by JSI.

(6) Whether USAID's disallowance of a percentage of the fixed fee that had already been paid is a breach of the contract in that (i) the contract was a performance based contract and the fixed fee was paid upon completion of performance milestones; the performance milestones were certified by the USAID Contracts Technical Officer (CTO); and (iii) USAID's disallowance of a percentage of the fixed fee was based on actual costs, not the performance milestones, and therefore, USAID breached its contract with JSI.

(7) Whether USAID acted prematurely by refusing to allow the testing and recertification process to be completed so that the Preeimcare incubators could be returned to service, and therefore, breached the contract with JSI and/or frustrated JSI's performance under the contract.

(8) Whether USAID failed to mitigate its damages by refusing to allow the testing and recertification process to be completed so that the Preeimcare incubators could be returned to service.

(9) Whether USAID's withdrawal of cooperation, abandonment and disavowal of the agreed upon Plan of Action, including its refusal to allow the testing and recertification process to be completed and the original incubators to be returned

to service and its subsequent Notice and Amended Notice of Intent to Disallow Costs and its Final Decision violated Federal Acquisition Regulation, 48 C.F.R. 33.204 and the government's policy to try to resolve all contractual issues in controversy, and therefore, USAID breached its contract with JSI.

(10) Whether USAID's Final Decision on its disallowance claim was not necessary as required by Federal Acquisition Regulation, 48. C.F.R. 33.211 because (i) reasonable means to satisfy the MOHP had not been exhausted; (ii) JSI had been working diligently with USAID and the MOHP under a Plan of Action to test and recertify the incubators, the final results of which were near completion when USAID ceased cooperation; and (iii) the MOHP expressed satisfaction with JSI's resolution and future disposition of the incubators – and therefore, USAID breached its contract with JSI.

(11) Whether all rights, title and interest in the Preemicare incubators had long since been transferred to and vested in the Egyptian Ministry of Health & Population when USAID obtained possession of the incubators and then instructed JSI on or July 24, 2005, to re-export 118 incubators from Egypt back to the United States.

(12) Whether USAID is liable to JSI for all costs associated with re-exportation, including shipping and storage.

(13) Whether USAID failed to validly issue a Notice of Intent to Disallow Costs, an Amended Notice of Intent to Disallow Costs, a Final Decision and Unilateral Debt Determination, and a Notice of Demand for Payment.

(14) Whether USAID failed to mitigate its damages by pursuing its cost reimbursement claims against ICS Technologies, Inc., the supplier of the incubators.

(15) Whether USAID is liable for the attorneys' fees, costs and expenses of JSI as a cost of the contract.

**Defendant's Position:**

(1) Whether JSI breached its contract with the Government when it supplied nonconforming, defective medical supplies, including the incubators at issue, to the Egyptian Ministry of Health.

(2) Whether JSI breached its contract with the Government, where JSI knew or should have known, of serious, life-threatening problems with the incubators soon after the incubators were delivered to hospitals and put into use.

(3) Whether JSI was liable for breach of contract where its attempts to rectify the problems with the incubators failed.

(4) Whether, due to its failure to provide the goods as required by the contract, JSI was liable to the Government for the payments it received for the defective incubators and the costs of removing, shipping and storing the incubators once they were taken out of service.

(5) Whether JSI has a valid claim against the Government for the payments withheld for the defective incubators and for the costs incurred by JSI for removing, shipping and storing the defective incubators.

(6) Whether JSI failed to mitigate the damages that it had caused the Government by failing to exercise warranty rights with respect to the defective, nonconforming, incubators.

**(I)** What is the likelihood of settlement? Is alternative dispute resolution (ADR) contemplated?

The parties anticipate holding settlement discussions, and are agreed that they cannot at this time predict the likelihood of settlement. ADR is currently not contemplated, but the parties are open to resolution of this matter through ADR.

**(J)** Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?

In the absence of a settlement or disposition of the case through pre-trial motions, the parties anticipate proceeding to trial. No party requests expedited trial scheduling.

**(K)** Are there special issues regarding electronic case management needs?

There are no special issues at this time regarding electronic case management needs.

**(L)** Is there other information of which the court should be aware at this time?

The Court should be aware that many of the documents and witnesses potentially relevant to this matter are located abroad, in Egypt and other countries.

**Discovery Plan**

The parties respectfully propose the following discovery plan:

1. Initial disclosures pursuant to Rule 26(a)(1) will be exchanged by December 14, 2007.

2. Limited discovery was conducted with respect to plaintiff's motion for partial

summary judgment. The remaining discovery will not be conducted in phases or limited to certain issues.

3. Each party shall disclose their expert witnesses and reports and make their expert witnesses available for depositions as follows:

(a) Plaintiff shall disclose all expert witnesses required by Rule 26(a)(2) no later than March 28, 2008.

(b) Plaintiff shall provide all expert reports required by Rule 26(a)(2)(B) no later than May 30, 2008.

(c) Plaintiff shall make such experts available for deposition no later than the close of discovery in this matter.

(d) Defendant shall disclose all expert witnesses required by Rule 26(a)(2) no later than March 28, 2008.

(e) Defendant shall provide all expert reports required by Rule 26(a)(2)(B) no later than May 30, 2008.

(f) Defendant shall make such experts available for deposition no later than the close of discovery in this matter.

4. Plaintiff anticipates taking approximately 35 depositions given the defenses raised by the Government, and defendant anticipates taking approximately 10 depositions. Some of the depositions are likely to be taken in Egypt. The Government objects to plaintiff taking more than 10 depositions pursuant to Rule 30(a)(1)(2)(A). The Plaintiff has provided the Government with a preliminary list of the deponents, including their position, government and private party affiliations.

5. The parties shall be allowed 35 interrogatories.

6. Discovery pursuant to Rule 34 shall be allowed.

7. No physical or mental examinations of the parties are expected under Rule 35.

8. Requests for admission pursuant to Rule 36 shall be allowed.

9. All discovery will be completed by December 19, 2008.

10. Dispositive motions, if any, shall be filed no later than January 30, 2009, with all responses and memorandums in opposition to be filed no later than 30 days afterwards.

## TRIAL

The parties respectfully propose the following trial plan:

1. Trial shall be held in Washington, DC.

2. Trial shall be held on or about April 1, 2009.

3. Trial shall last approximately 10 days.

Respectfully submitted,

By:
s/ Daniel A. Ball
DANIEL A. BALL
Ball Law Offices, P.C.
4416 East West Highway, 4th Floor
Bethesda, MD 20814
Tel: (301) 634-3147
Fax: (301) 215-9297
Attorneys for Plaintiff

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Stephen C. Tosini
STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

Dated: October 26, 2007

**CERTIFICATE OF FILING**

I hereby certify that on October 26, 2007, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Stephen C. Tosini
STEPHEN C. TOSINI